ANN M. LOUSIN *et al.*, Plaintiffs-Appellees, *v.* STATE BOARD OF ELECTIONS *et. al.*, Defendants-Appellees.— (COALITION FOR POLITICAL HONESTY *et al.*, Intervening Defendants-Appellants.)

First District (4th Division)   No. 82—1527

Opinion filed July 19, 1982.

Barry Sullivan, Daniel J. King, and William T. Barker, all of Chicago (Jenner & Block and Sonnenschein, Carlin, Nath & Rosenthal, of counsel), for appellants.

Louis Ancel, Stewart H. Diamond, and Adrienne Levatino-Donoghue, all of Ancel, Glink, Diamond, Murphy & Cope, and Samuel W. Witwer, Samuel W. Witwer, Jr., and James L. Siekmann, all of Witwer, Moran, Burlage & Atkinson, both of Chicago, for appellees Ann M. Lousin *et al.*

Tyrone C. Fahner, Attorney General, of Springfield (Michael J. Hayes, Roger P. Flahaven, and Gary E. Medler, Assistant Attorneys General, and James M. Scanlon, Special Assistant Attorney General, all of Chicago, of counsel), for appellees State Board of Elections *et al.*

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

This case involves a constitutional initiative petition proposing an amendment of article IV, the legislative article of the Illinois Constitution of 1970, which, if passed, would provide a legislative initiative. Amendment of article IV is governed by section 3 of article XIV of the Illinois Constitution of 1970, which provides in pertinent part as follows:

> "Amendments to Article IV of this Constitution may be proposed by a petition signed by a number of electors equal in number to at least eight percent of the total votes cast for candidates for Governor in the preceding gubernatorial election. Amendments shall be limited to structural and procedural subjects contained in Article IV [the legislative article]." Ill. Const. 1970, art. XIV, sec. 3.

On May 2, 1982, the Coalition for Political Honesty (hereinafter Coalition) filed a constitutional initiative petition with the Secretary of State of Illinois which proposed the following amendment (new text proposed by the intitiative is underlined) of sections 1 and 8, subsections 9(a), 9(b) and 9(c), and section 10 of article IV of the Illinois Constitution:

> "Section 1. Legislature — Power and Structure
>
> The legislative power is vested in a General Assembly consisting of a Senate and a House of Representatives elected by the electors from 59 Legislative Districts and 118 Representa-

tive Districts <u>and in the electors as provided in this Article.</u>

Section 8. Passage of Bills [and Measures]

(a) The enacting clause of the laws of this State shall be: 'Be it enacted by the People of the State of Illinois, represented in the General Assembly,' <u>if enacted by the General Assembly, or 'Be it enacted by the People of the State of Illinois,' if enacted by the electors.</u>

(b) The General Assembly shall enact laws only by bill <u>or measure.</u> Bills may originate in either house, but may <u>be amended</u> or rejected by the other. <u>A measure may be proposed by an initiative petition signed by a number of electors equal in number to at least six percent of the total votes case for candidates for Governor in the preceding gubernatorial election and may not be amended by either house.</u>

<u>An initiative petition proposing a measure shall be filed with the Secretary of State who shall within three calendar days transmit the proposed measure to each house of the General Assembly. When so transmitted, the measure shall be deemed introduced and pending in each house. The procedure for determining the validity and sufficiency of an initiative petition shall be provided by law.</u>

(c) No bill shall become a law without the concurrence of a majority of the members elected to each house. Final passage of a bill shall be by record vote. In the Senate at the request of two members, and in the House at the request of five members, a record vote may be taken on any other occasion. A record vote is a vote by yeas and nays entered on the journal.

<u>A measure may be passed by the General Assembly in the same manner as a bill. If a measure contains provisions whose enactment by bill would require the concurrence of more than a majority of the members elected to each house, it shall not be deemed passed unless it has received the requisite vote. If the petition proposing a measure is not valid and sufficient, passage of the measure by the General Assembly shall have the same effect as if it had been passed as a bill.</u>

(d) A bill <u>or measure</u> shall be read by title on three different days in each house. A bill and each amendment thereto <u>or a measure</u> shall be reproduced and placed on the desk of each member before final passage.

Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, and measures shall be confined to one subject. Appropriation bills shall be limited to the subject of appropriations, and appropriations shall not be made by measure.

A bill expressly amending a law shall set forth completely the sections amended.

The Speaker of the House of Representatives and the President of the Senate shall sign each bill or measure that passes both houses to certify that the procedural requirements for passage have been met.

An initiative petition shall contain the text of the measure proposed except for the enacting clause which shall be deemed added in accordance with the method by which the measure is enacted. An initiative petition shall specify the date of the general election at which the measure is to be submitted to the electors if not otherwise enacted, shall have been signed by the petitioning electors not more than twenty-one months preceding that general election and shall be filed with the Secretary of State on or before the fourth Tuesday of March next preceding that general election. A measure proposed by a valid and sufficient initiative petition shall be submitted to the electors at the general election specified in the petition unless it has been passed by the General Assembly prior to July 1 next preceding that general election and has become a law without change at least 70 days before that general election.

If a majority of the members elected to each house of the General Assembly so direct at least 63 days before the general election at which a measure is to be submitted, an alternate measure shall be submitted to the electors together with such measure. An alternate measure must pertain to the same subject as the measure with which it is to be submitted.

A measure or alternate measure submitted to the electors shall become law if approved by a majority of votes cast thereon, except that if both a measure and an alternate measure submitted with it are so approved, only the one receiving the greater number of affirmative votes shall become law. A measure or alternate measure which becomes law through approval by the electors shall have

the same force and effect as if it were a bill passed by a vote of three-fifths of the members elected to each house of the General Assembly and signed by the Governor. If the provisions of two or more measures or alternate measures enacted by the electors at the same election conflict with one another, the provisions of the measure or alternate measure receiving the greater number of affirmative votes shall prevail to the extent of the conflict."

"Section 9. Veto Procedure

(a) Every bill passed by the General Assembly shall be presented to the Governor within 30 calendar days after its passage. Every measure passed by the General Assembly shall be presented to the Governor within 7 calendar days after its passage. The foregoing requirements shall be judicially enforceable. If the Governor approves the bill or measure, he shall sign it and it shall become law.

(b) If the Governor does not approve the bill, he shall veto it by returning it with his objections to the house in which it originated. If the Governor does not approve a measure, he shall veto it by returning it with his objections to the house which first passed it. Any bill not so returned by the governor within 60 calendar days after it is presented to him and any measure not so returned within 15 calendar days after it is presented to him shall become law. If recess or adjournment of the General Assembly prevents the return of a bill or measure, the bill or measure and the Governor's objections shall be filed with the Secretary of State within the period allowed for its return. The Secretary of State shall return the bill or measure and objections to the originating house promptly upon the next meeting of the same General Assembly at which the bill or measure can be considered.

(c) The house to which a bill or measure is returned shall immediately enter the Governor's objections upon its journal. If within 15 calendar days after such entry that house by a record vote of three-fifths of the members elected passes the bill or measure, it shall be delivered immediately to the second house. If within 15 calendar days after such delivery the second house by a record vote of three-fifths of the members elected passes the bill or measure, it shall become law."

"Section 10. Effective Date of Laws

The General Assembly shall provide by law for a uniform effective date for bills passed prior to July 1 of a calendar year. The General Assembly may provide for a different effective date in any bill passed prior to July 1. A bill passed after June 30 shall not become effective prior to July 1 of the next calendar year unless the General Assembly by the vote of three-fifths of the members elected to each house provides for an earlier effective date. A measure or alternate measure enacted into law shall become effective on January 1 of the next calendar year following its enactment unless the measure or alternate measure provides for a later effective date."

On May 12, 1982, plaintiffs filed a complaint against defendants, the State Board of Elections, the State Comptroller, the Secretary of State, the Cook County clerk and the Chicago board of election commissioners. Plaintiffs are Ann M. Lousin, Elmer Gertz, Thomas G. Lyons, Elbert S. Smith, Lucy Reum, J. L. Buford, Lester W. Brann, Jr., Maurice W. Scott and Stanley C. Johnson. They are Illinois citizens and taxpayers who either participated in the sixth Illinois constitutional convention or have an interest in the Constitution of 1970 which was drafted by the convention. Plaintiffs sought to enjoin defendants from expending approximately $1,053,000 in public funds to determine the validity and sufficiency of the initiative petition and to arrange for and to conduct an election on the proposed amendment. They brought suit under section 11 and subsequent sections of chapter 102 of the Illinois Revised Statutes of 1979 to enjoin the disbursement of public monies. Plaintiffs alleged that the proposed amendment would violate article XIV, section 3, of the Illinois Constitution.

On May 12, 1982, the Coalition, the association which circulated the constitutional initiative petition throughout the State, was allowed to intervene in the proceeding as a defendant. Plaintiffs and the Coalition filed cross-motions for summary judgment and submitted memoranda of law. A hearing on the matter began on June 16, 1982. On June 21, 1982, the trial court entered judgment for plaintiffs. It issued the injunction prayed for by plaintiffs and the Coalition immediately filed a notice of appeal. On June 30, 1982, the supreme court denied the Coalition's motion for leave to appeal under Supreme Court Rule 302(b) (73 Ill. 2d R. 302(b)) and directed that the appeal be heard in the appellate court on an expedited basis and that an opinion be filed on or before July 19, 1982.

In two previous cases, the Coalition has litigated issues concern-

ing the interpretation of article XIV of the Illinois Constitution. In *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 472, 359 N.E.2d 138, 147, our supreme court held that the word, "and" in the sentence "Amendments shall be limited to structural and procedural subjects contained in Article IV" is conjunctive and not disjunctive as the Coalition had argued. The supreme court further stated:

> "The defendants do not attempt to argue that the proposals meet these dual requirements [*i.e.*, structural and procedural subject matter]. The proposed amendments did not meet the constitutional prescriptions, and the circuit court properly granted the plaintiffs' motion for summary judgment." *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 472.

In *Coalition for Political Honesty v. State Board of Elections* (1980), 83 Ill. 2d 236, 415 N.E.2d 368, a Coalition petition proposed to amend the legislative article of the Illinois Constitution by reducing the size of the House of Representatives, abolishing cumulative voting and by electing representatives from single member districts. Our supreme court stated that this amendment qualified for submission to the electorate because the proposed changes related "directly to the ultimate purpose of structural and procedural change in the House of Representatives." *Coalition for Political Honesty v. State Board of Elections* (1976), 83 Ill. 2d 236, 260.

At issue in this case is whether the trial court erred in granting summary judgment for plaintiffs on the basis that the Coalition's proposed amendment violates article XIV, section 3, of the Illinois Constitution of 1970.

Our supreme court discussed the proposal by the delegates to the Illinois constitutional convention of 1970 for a constitutional general initiative in *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 467, 359 N.E.2d 138. The court said:

> "There has not been a prior constitution of Illinois which provided for its amendment by any form of popular initiative. The only methods of amendment have been by proposals originating in the General Assembly or by convention calls. See Ill. Const. 1818, art. VII, sec. 1; Ill. Const. 1848, art. XII, secs. 1 and 2; Ill. Const. 1870, art. XIV, secs. 1 and 2.
>
> At the 1970 convention the majority of the Committee on Suffrage and Constitutional Amendments declined to propose a general initiative which would have allowed the amendments of any part of the Constitution by initiative. The committee's re-

port indicated that it considered that a general initiative was unnecessary since the other procedures for amending the Constitution were to be liberalized, including the automatic, periodic submission to the electorate of the question of calling a constitutional convention. (See Ill. Const. 1970, art. XIV, sec. 1.) The report further expressed concern that a general initiative provision would be subject to abuse by special interest groups and might result in hasty and ill-conceived attempts to write what should have been the subject of ordinary legislation into the Constitution. 7 Proceedings 2298."

In conformance with those conclusions and concerns, the constitutional convention provided only a narrowly defined constitutional initiative. Article XIV, section 1, of the Illinois Constitution provides that there will be a constitutional convention whenever a three-fifths majority of each house of the General Assembly so decides. The question will then be submitted to the voters at the next general election but not less than 6 months after the decision by the General Assembly. If no decision to call a constitutional convention is made by the General Assembly during any 20-year period, then the Secretary of State shall submit the question to the voters at the general election in the 20th year following the last submission.

Article XIV, section 2, provides for an unlimited constitutional initiative by a three-fifths majority vote of each house of the General Assembly. Article XIV, section 3, provides for a constitutional initiative by petition of the electorate limited to amending article IV, the legislative article, and then further limited to structural and procedural subjects contained in article IV. The specific question presented is whether the proposed amendment is a structural and procedural subject.

An amendment is structural and procedural if it relates to the structure, and, of necessity, incidentally affects the procedure of the General Assembly. The General Assembly is an institution in which structure and procedure can be changed as provided by section 3 of article XIV. The amendment which the Coalition proposes affects legislative power. Under section 3 of article IV, power is vested in the General Assembly. As proposed, the amendment would vest power not only in the General Assembly but also in the electors. Legislative power is a concept rather than an institution which has a structure such as the General Assembly. In the 1976 Coalition case, Justice Schaeffer made it clear, while dissenting on other issues, that the initiative process could not be used to alter or change the power of the legislature. He said:

"The basic grant of legislative power in section 1, and the grant of legislative immunity in section 12 of article IV, are neither 'procedural' nor 'structural,' and there are other provisions in article IV which would not fit comfortably in either of those categories.

What the constitutional convention feared was that the initiative procedure which it was authorizing might be misused to accomplish 'substantive changes.' *** It was to avoid that kind of amendment that the convention decided to limit the subject matter of amendments proposed by popular initiative. The words used to accomplish that result effectively cut off amendments which would affect the power of the General Assembly, ***." *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 474-75, 359 N.E.2d 138, 148-49.

The constitutional initiative proposed by the Coalition is an attempt to expand article XIV, section 3, beyond the scope intended by the delegates of the constitutional convention of 1970.

Therefore, we conclude that the constitutional initiative proposed by the Coalition for Political Honesty violates article XIV, section 3, of the Illinois Constitution of 1970.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and JIGANTI, JJ., concur.