(No. 70436.—

THE CHICAGO BAR ASSOCIATION *et al.*, Appellants, v. THE STATE BOARD OF ELECTIONS *et al.* (Tax Accountability Amendment Committee *et al.*, Appellees).

*Opinion filed August 22, 1990.*

Leonard M. Ring and Leslie J. Rosen, of Leonard M. Ring & Associates, P.C., and Rene A. Torrado, Jr., of Vedder, Price, Kaufman & Kammholz, all of Chicago, for appellants.

Robert J. Ruiz, Solicitor General, and Michael J. Hayes, James R. Carroll and Roger P. Flahaven, Assistant Attorneys General, all of Chicago, for the State Board of Elections *et al.* and for *amicus curiae* Neil F. Hartigan, Attorney General.

Rivkin, Radler, Bayh, Hart & Kremer, of Chicago (Steven R. Merican and Michelle J. Gilbert, of counsel), for appellee Tax Accountability Amendment Committee.

Sherman Carmell, of Carmell, Charone, Widmer, Mathews & Moss, of Chicago, for *amicus curiae* Chicago Federation of Labor & Industrial Union Council.

Michael L. Shakman, R. Dickey Hamilton and Barry A. Miller, of Miller, Shakman, Hamilton & Kurtzon, of Chicago, for *amici curiae* Citizens for Fair Tax Policy *et al.*

Mitchell Roth, of Springfield, for *amicus curiae* Illinois Education Association-NEA.

Maurice E. Bone and Dennis A. Rendleman, of Springfield, for *amicus curiae* Illinois State Bar Association.

Joel A. D'Alba, Lester Asher and Stephen Feinberg, of Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd., of Chicago, for *amicus curiae* Illinois State Federation of Labor & Congress of Industrial Organization.

W. Robert Blair and Steven R. Blair, of Blair & Blair, of Chicago, for *amicus curiae* George H. Ryan.

Joseph A. Morris and Peter G. Gallanis, of Chicago (Morris, Rathnau & De La Rosa, of counsel), for *amicus curiae* Lincoln Legal Foundation.

Richard S. Williamson and Steven K. Skinner, both of Chicago, for *amicus curiae* Jim Edgar.

JUSTICE RYAN delivered the opinion of the court:

This case involves a proposed amendment to article IV of the Illinois Constitution by use of the initiative procedure set forth in section 3 of article XIV of the Illinois Constitution of 1970. A committee collected nearly 500,000 signatures in support of a petition to place the proposed initiative amendment on the ballot for the November 6, 1990, general election. This petition and the

signatures were filed with the Secretary of State. The proposed amendment is commonly called the Tax Accountability Amendment (Amendment) and the committee supporting the Amendment is referred to as the Tax Accountability Amendment Committee (TAAC).

Plaintiffs, the Chicago Bar Association (CBA), its president, Gordon B. Nash, Jr., and vice-president (president-elect), Laurel G. Bellows, filed a complaint in the circuit court of Cook County on May 23, 1990, seeking to prevent defendants from spending public money to place the proposed Amendment on the November 6, 1990, ballot. The complaint named as defendants the State Board of Elections, its chairman, vice-chairman and members, the State Comptroller, the State Treasurer, the county clerk of Cook County, and the Chicago board of elections, its chairman and commissioners. Plaintiffs allege that the proposed Amendment does not fulfill the requirements for amendment to article IV of the constitution by popular initiative. (Ill. Const. 1970, art. XIV, §3.) The suit is predicated on the Disbursement of Public Moneys statute (Ill. Rev. Stat. 1987, ch. 110, par. 11—301 *et seq.*).

Plaintiffs also filed a petition with this court on May 24, 1990, asking the court to take the matter as an original action. We declined to do so, finding no original jurisdiction, but instructed the trial court to rule on the cause before it by July 2, 1990, so that an appeal could be expedited to accommodate the time limitations associated with the November 6, 1990, general election.

The circuit court permitted the TAAC to intervene as party defendant. Various parties were granted leave to file *amicus curiae* briefs. The TAAC filed an answer to the complaint, a summary judgment motion and a motion not relevant to this appeal. Plaintiffs opposed these motions, filed a brief supporting their complaint, and filed their own summary judgment motion.

The parties presented their argument in the circuit court of Cook County on June 27, 1990. Within the time ordered by this court, the trial court entered a written order holding that the proposed Amendment meets the requirements of article XIV, section 3, of the Illinois Constitution. The court, therefore, granted summary judgment for defendant TAAC and against plaintiffs. Plaintiffs filed a notice of appeal and moved for a direct appeal to this court, which we granted (107 Ill. 2d R. 302(b)).

The proposed Amendment provides, in pertinent part, as follows:

"Section 8.1 Passage of Revenue Bills

(a) A bill that would result in the increase of revenue to the State may become law only by a vote of three-fifths of the members in each house of the General Assembly.

(b) Each house of the General Assembly shall have a revenue committee. It shall be the sole and the exclusive responsibility of the revenue committees to consider all bills which would result in an increase or decrease of revenue to the State. A bill pending in a revenue committee must be approved by a majority of members of that committee before it is sent to the full house for consideration or vote.

(c) There shall be 25 members on the revenue committee in the House of Representatives. The members of the House Revenue Committee shall be appointed by the Speaker of the House and the House Minority Leader. The membership of the committee shall be proportionally as close arithmetically as possible to the percentage of members in the House of Representatives who vote for the Speaker and who vote for the Minority Leader.

There shall be 13 members on the revenue committee in the Senate. The members of the Senate Revenue Committee shall be appointed by the President of the Senate and the Senate Minority Leader. The membership of the committee shall be proportionally as close arithmetically

as possible to the percentage of members in the Senate who vote for the Senate President and who vote for the Senate Minority Leader.

Revenue committee members may be removed from the committee only by a majority, recorded, roll call vote of all members of the committee's respective chamber. No member of the General Assembly may serve more than four consecutive years on a revenue committee.

(d) The revenue committees may not vote upon a bill until a public hearing on the bill has been held. Reasonable notice of the hearing, which in no event may be less than two weeks, shall be given to the public."

Prior to 1970, the constitutions of this State did not provide for amending the constitution through the direct initiative process. The Constitution of 1970 provides for amending the constitution in three ways: (1) by a constitutional convention (Ill. Const. 1970, art. XIV, §1), (2) by a resolution approved by a three-fifths vote of both houses of the legislature, and by approval by the electorate by a vote of three-fifths of those voting on the question, or a majority of all those voting at the election (Ill. Const. 1970, art. XIV, §2), or (3) amending article IV of the constitution by use of the initiative procedure (Ill. Const. 1970, art. XIV, §3). The TAAC seeks to amend the constitution through the initiative process outlined in section 3 of article XIV of the Illinois Constitution, thus bypassing action by the legislature, which would be required if the amendment procedures set out in section 2 of article XIV were used. Section 3 of article XIV, however, is not as broad an amendment authority as that contained in sections 1 and 2 of article XIV. Section 3 provides only for an amendment to the legislative article of the constitution, and under that section, not every aspect of the legislative article is subject to amendment through the initiative process. The express limitations of section 3 are: "Amendments shall be limited to structural and procedural subjects contained in Article IV."

(Ill. Const. 1970, art. XIV, §3.) The question posed, therefore, is whether the proposed Amendment falls within the limitations of section 3 of article XIV.

Only three cases have thus far addressed the requirements of section 3 of article XIV. In *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453 (*Coalition I*), the court found that a proposed Amendment that would place additional restrictions on legislators' salaries and that would require legislators to disclose financial interests and refrain from voting when a conflict might exist would not effect both structural and procedural changes in article IV, as the court found article XIV, section 3, to require. The *Coalition I* court relied extensively on the debates in concluding that the initiative process is limited to changes that are both structural and procedural. The court did not, however, address what it would consider to be the limits of subjects of article IV, which is more directly at issue in the present case.

In *Lousin v. State Board of Elections* (1982), 108 Ill. App. 3d 496, the court held that a proposed Amendment that would create an initiative process for enacting legislation did not meet the requirements set forth in section 3 of article XIV. The court, relying on *Coalition I* and noting Justice Schaefer's dissent therein, held that "the initiative process [cannot] be used to alter or change the power of the legislature." (108 Ill. App. 3d at 503.) The court simply found, from looking at the constitutional debates and the *Coalition I* court's discussion of them, that the popular initiative process was not designed to go that far. In *Coalition for Political Honesty v. State Board of Elections* (1980), 83 Ill. 2d 236 (*Coalition II*), the court approved for placement on the ballot a proposed Amendment that would change legislative districts and alter the absolute number of legislators. *Coalition II*

does not, however, extensively discuss the requirements for popular initiative.

In the present case, it is apparent that both the proposed Amendment and the brief and argument of the TAAC in this court were crafted to accommodate the holding of *Coalition I* that the proposed Amendment must deal with both procedural and structural subjects of article IV of the constitution. Defendant TAAC argues that the provision that each house of the General Assembly must have a revenue committee, setting forth the number of members of each committee, would alter the structure of the General Assembly. The TAAC further argues that the provision of the proposed Amendment which provides that the revenue committee may not vote upon a bill until a public hearing has been held, and that there be at least two weeks' notice of such hearing, as well as the requirement that a bill which would result in increase in revenue to the State may become law only by three-fifths vote of the members in each house, alters the procedure of the General Assembly. Thus, the TAAC argues, both the procedural and structural requirements of section 3 of article XIV have been met.

Plaintiffs contend, however, that only procedural matters are addressed by the proposed Amendment and that, therefore, the requirement of *Coalition I* that both procedural and structural subjects of article IV be altered is not met. Plaintiffs contend that each house of the General Assembly works through committees and that the provision in the proposed Amendment concerning the revenue committee of each house relates to procedure only, and does not alter the structure of the General Assembly. Plaintiffs also contend that the first sentence in the proposed Amendment, which requires that a bill *that would result in the increase of revenue to the State* can only be adopted by three-fifths vote of each house, is vague and uncertain.

It is clear from the debates of the Constitutional Convention of 1970 that only a very limited form of constitutional initiative was acceptable. A majority of the Committee on Suffrage and Constitution Amending had rejected a general constitutional initiative. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2298 (hereafter Proceedings).) It was the belief of the majority of that committee that a general initiative provision was unnecessary in view of the liberalized amendment procedures of the new constitution. A minority of the committee recommended a general initiative provision for amending the constitution which, after debate, was defeated. (6 Proceedings 578-87.) What is now section 3 of article XIV of the constitution was originally section 15 of the report of the Committee on the Legislative Article. (6 Proceedings 1399.) This court discussed section 15, and the debates on that section, at length in *Coalition I*:

"The committee's explanation which accompanied the proposal made it clear that it was intended that the Constitution's initiative process of amendment could not be used as a substitute for legislative action. The report stated:

'Any amendment, so proposed, would be required to be limited to subjects contained in the Legislative Article, namely matters of structure and procedure and not matters of substantive policy.

\* \* \*

Debate in this Convention on the Constitutional Initiative revealed two serious weaknesses in the Constitutional Initiative process found in several states: (1) it permits legislation by constitutional amendment; and (2) it allows the constitutional amending process to become embroiled in highly emotional and complex issues which often cannot be adequately and clearly explained to the voters.

Neither of these two serious weaknesses can be attributed to the proposed Constitutional Initiative

for the Legislative Article. All proposed Constitutional amendments submitted through use of this proposal would be expressly limited to subject matter specifically contained in the Legislative Article. The subject matter contained in the proposed Article pertains only to the basic qualities of the legislative branch—namely structure, size, organization, procedures, etc.' (6 Proceedings 1400-01.)

And of particular significance there it was said:

'Section 15 specifically limits amendments to "structural and procedural" subject matter. Clearly the subject matter of the proposed article could not be construed to permit initiative amendments of a statutory nature. Clearly, the subject matter of the proposed article is not laden with the highly complex and emotion-charged issues which have plagued the constitutional initiative process in other states.' 6 Proceedings 1401.

The committee's proposal was presented to the convention by Delegate Perona. \*\*\* He continued, saying that the proposal would avoid the major defect shown in the general initiative in other States where it has been abused and used to introduce emotion-provoking subjects into the Constitution which should have been introduced through the legislative process. (4 Proceedings 2710.) Delegate Connor then presented this question:

'MR. CONNOR: Delegate Perona, the first few words say, "Amendments to the legislative article." How does one describe what an amendment to the legislative article is? Additions would be amendments—new sections, and so on—how do you limit what can be amended by this route? Somebody describes by petition that this is an amendment of the legislative article; who says it isn't?

MR. PERONA: That's a good question. We attempted to limit the legislative article—as you have seen now by the fourteen sections that have preceded this one—to the legislature itself, to its structure, makeup, and organization, and details concerning it.

Are you specifically referring to the possibility of adding sections similar to those in the 1870?

MR. CONNOR: Well, lots of things have sailed under the colors of being legislative-article additions, and I just wonder what meaning then it has to say, "additions to the legislative article."

MR. PERONA: Well, the report indicates that we intend to limit this to the sections—to the sections presently—the type of sections presently in the legislative article. ***' (4 Proceedings 2711.)" *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 468-70.

Several things are clear concerning proposed section 15 from the committee report and from the debates. The amendment procedure proposed requires that any amendment by initiative be limited to the structural and procedural subjects contained in the legislative article. The delegates were aware that attempts could be made to circumvent the restrictions by presenting matters outside the legislative article as amendments to that article of the constitution. Also, and most significant, the proposal and the debates reflected the intent that the limited initiative *not be used to accomplish substantive changes* in the constitution, but that the proposals pertain only to the basic qualities of the legislative branch—namely, structure, size, organization, procedures, etc. 6 Proceedings 1401.

In our case, a substantial part of the briefs and arguments on both sides concerns whether the proposed Amendment is both structural and procedural. We need not focus on that issue here. The most significant language of section 3 of article XIV, so far as this case is concerned, is "[a]mendments *shall be limited* to structural and procedural *subjects contained in Article IV.*" (Emphasis added.) (Ill. Const. 1970, art. XIV, §3.) Thus, the Amendment must be limited to structural and procedural matters and may not include substantive matters.

Also, the subject of the Amendment must be found in article IV. By so limiting the use of the initiative, the delegates sought to avoid the use of the initiative to incorporate into the constitution what in effect was legislation. 6 Proceedings 1401.

The TAAC argues that the proposed Amendment does affect structural and procedural subjects of article IV, and thus complies with section 3 of article XIV. Even assuming that the TAAC is correct in this regard, we find that the proposed Amendment is not *limited to* the structural and procedural subjects of article IV. Wrapped up in this structural and procedural package is a substantive issue not found in article IV—the subject of increasing State revenue or increasing taxes. Delegate Connor's question posed to Delegate Perona concerned this very problem: "[H]ow do you limit what can be amended by this route? Somebody describes by petition that this is an amendment of the legislative article; who says it isn't? *** Well, lots of things have sailed under the colors of being legislative article additions." Delegate Perona answered, "Well, the report indicates that we intend to limit this to the sections *** the type of sections presently in the legislative article." (4 Proceedings 2711.) Voicing the same concern, Delegate Whalen asked Delegate Perona, "[H]ow do you determine that an amendment that has been filed by petition will be germane to the legislative article? Wouldn't it be possible to get nongermane amendments, and just under the heading, 'Legislative Article,' be able to amend the constitution by initiative in any manner?" Delegate Perona responded, "We state that it shall be limited to structural and procedural subjects contained in this article on the legislature." 4 Proceedings 2911-12.

Justice Schaefer, in his dissent in *Coalition I*, expressed the sense of concern that ran throughout the debates at the convention, as follows:

"What the constitutional convention feared was that the initiative procedure which it was authorizing might be misused to accomplish 'substantive changes.' For example, amendments reading: 'The General Assembly shall never pass a law abolishing the death penalty' or 'The General Assembly shall enact legislation which will prohibit abortions' could arguably be regarded as amendments to the legislative article since they bear directly upon the power of the legislature. It was to avoid that kind of amendment that the convention decided to limit the subject matter of amendments proposed by popular initiative." 65 Ill. 2d at 474-75.

A brief filed by an *amicus* pointed out that if this court finds that the proposed Amendment falls within the limitations of section 3 of article XIV then almost any substantive issue can be cast in the form of an amendment to the structure and procedure of the legislative article by using the same scenario. We agree. Taking the two subjects Justice Schaefer referred to in his dissent in *Coalition I*, the death penalty and abortion, by using the scheme adopted by the proponents of the proposed Amendment in this case, a proposed Amendment could establish a special committee in each house of the legislature, to which all bills pertaining to criminal sentencing must be referred. The proposed Amendment could further provide that any law abolishing the death penalty must receive a three-fifths or a three-fourths, or whatever other fraction may be chosen, vote of each house in order to become law. As to the abortion question, a proposed Amendment could establish a special privacy committee (or one by some other appropriate name) in each house, to which all bills pertaining to abortion must be referred, and provide that no bill abolishing (or permitting) abortion may become law unless it receives a three-fifths or a three-fourths vote of each house.

Almost any substantive issue could be fit within the outlines of structural and procedural changes to subjects of the legislative article crafted by the TAAC. One need only provide in a proposed Amendment for the creation in each house of a special committee, provide for its membership, require notice and hearing on bills referred to the committee, and require a certain vote in each house for passage of such bills. This, according to the argument of the TAAC, would satisfy the structural and procedural requirements of section 3 of article XIV.

To permit this would violate the intent so clearly expressed in the convention committee reports and debates to limit constitutional Amendment by initiative to structural and procedural subjects of the legislative article and to prohibit the incorporation into such amendments of substantive matters. To permit such a use of the constitutional initiative amendment procedure would also bring to reality the concern voiced by Delegate Whalen when he asked Delegate Perona, "Wouldn't it be possible *** under the heading, 'Legislative Article,' [to] be able to amend the constitution by initiative in any manner?" By permitting the Amendment now before us to be placed on the ballot in November, we will have forfeited the confidence Delegate Perona, in his reply to Delegate Whalen, placed in the courts to prevent such action. (4 Proceedings 2912.) We hold that the proposed Amendment is not *limited* to structural and procedural *subjects contained in article IV*; that it contains substantive matters found outside of article IV. Thus, the proposed Amendment does not satisfy the requirements of section 3 of article XIV of the Illinois Constitution of 1970.

We note from our review of the record of the proceedings that the TAAC argued in the circuit court, although it was ultimately stricken, that, if the court held that the proposed Amendment could not be placed on the ballot, the court would be violating the people's fun-

damental right to petition their government. (U.S. Const., amend. I.) That is, the TAAC argued, once the right of popular initiative is created, it cannot be taken away. (*Grant v. Meyer* (10th Cir. 1987), 828 F.2d 1446, 1455-56; *Briscoe v. Kusper* (7th Cir. 1970), 435 F.2d 1046, 1053.) As stated in this opinion, however, the constitution that the people of this State ratified in 1970 does not permit the popular initiative procedure to be used to effectuate substantive amendments such as the one here in question. As such, because a right that does not exist cannot be taken away, we find this argument unpersuasive.

This opinion is based solely on the construction of section 3 of article XIV of the constitution and voices no opinion as to the wisdom or desirability of the content of the proposed Amendment.

The judgment of the circuit court of Cook County is reversed. The cause is remanded to the circuit court with directions to grant summary judgment for the plaintiffs.

*Reversed and remanded,*
*with directions.*