(No. 77405.—
(No. 77566.—

THE CHICAGO BAR ASSOCIATION *et al.,* Appellees, v. ILLINOIS STATE BOARD OF ELECTIONS *et al.,* Appellants.

*Announced August 10, 1994.—Opinion filed September 7, 1994.—Rehearing denied September 12, 1994.*

HARRISON, J., joined by MILLER and HEIPLE, JJ., dissenting.

Gordon B. Nash, Jr., and Ina L. Turner, of Gardner, Carton & Douglas, and Rene A. Torrado, Jr., Janet M. Hedrick and Paula K. Bebensee, of Vedder, Price, Kaufman & Kammholz, all of Chicago, for petitioners-appellees.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, of Chicago, of counsel), for respondents-appellants State Board of Elections *et al.*

Thomas R. Meites, Special Assistant Attorney General, of Meites, Frackman, Mulder & Burger, of Chicago, for respondent-appellant Patrick Quinn.

Thomas E. Johnson and Phillip H. Snelling, of Johnson, Jones & Snelling, of Chicago, for intervening respondents-appellants.

PER CURIAM: These consolidated cases involve a proposed amendment to article IV, the legislative article, of the Illinois Constitution of 1970, by use of the initiative procedure established in article XIV, section 3, of our constitution. On August 10, 1994, this court entered a judgment preventing various public officials from placing the proposed amendment on the November 1994 general election ballot. This opinion will state the reasons for that judgment.

## BACKGROUND

Two organizations, the Eight is Enough Committee and Term Limits Illinois (Proponents) petitioned to amend article IV, sections 2(a), 2(b), and 2(c), of the Illinois Constitution (Ill. Const. 1970, art. IV, §§ 2(a), 2(b), 2(c)). The Proponents seek to impose a limit on the number of years a State legislator may serve in the General Assembly. As amended, the constitutional provisions would read as follows (additions are underlined):

"§ 2. Legislative Composition

(a) One Senator shall be elected from each Legislative District. Immediately following each decennial redistricting, the General Assembly by law shall divide the Legislative Districts as equally as possible into three groups. Senators from one group shall be elected for terms of four years, four years and two years; Senators from the second group, for terms of four years, two years and four years; and Senators from the third group, for terms of two years, four years and four years. The Legislative Districts in each group shall be distributed substantially equally

over the State. For the exclusive purpose of calculating of service under the tenure limitation contained in Section 2(c), a person who serves two years or less of a term of a Senator shall be deemed to have served two years and a person who serves more than two years of a four-year term of a Senator shall be deemed to have served four years.

(b) Each Legislative District shall be divided into two Representative Districts. In 1982 and every two years thereafter one Representative shall be elected from each Representative District for a term of two years. For the exclusive purpose of calculating length of service under the tenure limitation contained in Section 2(c), a person who serves any part of a term of a Representative shall be deemed to have served two years.

(c) To be eligible to serve as a member of the General Assembly, a person must be a United States citizen, at least 21 years old, and for the two years preceding his election or appointment a resident of the district which he is to represent. No person shall be eligible to serve as a member of the General Assembly for more than eight years. No person who has served six years in the General Assembly shall be eligible to be elected to a four-year term as a Senator. This tenure limitation is not retroactive and shall not apply to service as a member of the General Assembly before the second Wednesday in January, 1995. In the general election following a redistricting, a candidate for the General Assembly may be elected from any district which contains a part of the district in which he resided at the time of the redistricting and reelected if a resident of the new district he represents for 18 months prior to the reelection."

The Proponents circulated their petition pursuant to article XIV, section 3, of our constitution. The Proponents obtained more than the required number of voters' signatures—437,088, which represents approximately 13% of all those who voted for Governor in the preceding gubernatorial election in 1992. (See Ill. Const. 1970, art. XIV, § 3.) The Proponents filed the petition with the Illinois Secretary of State, who in turn forwarded it to the Illinois State Board of Elections.

The Chicago Bar Association and two of its officers (CBA) began two legal proceedings. The CBA alleged in both proceedings that the proposed amendment did not meet the requirements of article XIV, section 3. In cause No. 77566, the CBA brought a taxpayer action in the circuit court of Cook County under the disbursement of public moneys statute, seeking declaratory and injunctive relief. (735 ILCS 5/11—301 *et seq.* (West 1992).) In cause No. 77405, the CBA brought an original action in this court, seeking a writ of *mandamus.* Ill. Const. 1970, art. VI, § 4(a); 134 Ill. 2d R. 381.

The CBA named the same parties as defendants in the taxpayer action and respondents in the original *mandamus* proceeding: the Illinois State Board of Elections, the State Comptroller, the State Treasurer, the Secretary of State, the Cook County clerk, and the Chicago board of election commissioners (officials). Also, the Proponents have been allowed to intervene on the side of the officials.

In the *mandamus* proceeding, we allowed the CBA's motion for leave to file its petition for the writ. In the taxpayer action, the trial court entered an order in favor of the CBA. The court declared the proposed amendment to be invalid and permanently enjoined the expenditure of State funds for the amendment. We ordered that the trial court enter an automatic notice of appeal, and that the appeal be transferred directly to this court and consolidated with the *mandamus* proceeding.

## DISCUSSION

### Preliminary Matters

Initially, we agree with the dissent that issues of standing and ripeness do not preclude a review of the merits. 161 Ill. 2d at 516 (Harrison, J., joined by Miller & Heiple, JJ., dissenting).

Also, we agree with the dissent that the *mandamus* proceeding in this court must be dismissed. (161 Ill. 2d

at 516 (Harrison, J., joined by Miller & Heiple, JJ., dissenting).) It must be remembered that a writ of *mandamus* commands a public officer to perform an official, nondiscretionary duty that the petitioner is entitled to have performed and that the officer has failed to perform. (*Madden v. Cronson* (1986), 114 Ill. 2d 504, 514; *People ex rel. Heydenreich v. Lyons* (1940), 374 Ill. 557, 567-68.) The writ provides affirmative rather than prohibitory relief. *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 468.

Applying these principles to the present case, it is clear that the CBA seeks prohibitory and not mandatory relief. Indeed, we note that several times during oral argument in this court the CBA stated that the "initiative process should go no further." Also, no party has alleged that any of the officials have failed to perform any official duty related to the proposed amendment. The appropriate proceeding for a case such as this is not a petition for a writ of *mandamus*, but rather a taxpayer action for injunctive relief. 735 ILCS 5/11—301 *et seq.* (West 1992); *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 461 (*Coalition I*); see *Chicago Bar Association v. State Board of Elections* (1990), 137 Ill. 2d 394, 396 (*CBA*).

### Taxpayer Action

We now turn to the merits of the taxpayer action. Article XIV, section 3, of our constitution establishes a constitutional initiative process for amending the legislative article:

> "Amendments to Article IV of this Constitution may be proposed by a petition signed by a number of electors equal in number to at least eight percent of the total votes cast for candidates for Governor in the preceding gubernatorial election. *Amendments shall be limited to structural and procedural subjects contained in Article IV.*" (Emphasis added.) Ill. Const. 1970, art. XIV, § 3.

The CBA contends that the proposed amendment is

invalid because it does not meet the subject matter requirement of article XIV, section 3. The CBA argues that the proposed amendment does not affect either the General Assembly's structure or procedure and certainly not both.

We emphasize that this court voices no opinion as to the wisdom or desirability of the proposed amendment. Rather, our judgment is based solely on our settled construction of article XIV, section 3. See *CBA*, 137 Ill. 2d at 407.

As in *Coalition I*, we are presented with the question of whether a proposed amendment to our constitution satisfies the constitution's own requirements for its amendment. As this court explained in *Coalition I*:

"Article XIV, section 3, of the Constitution provides specific requirements for the proposing of amendments under the initiative procedure. The Constitution has an express limitation as to the subject matter of a proposal: 'Amendments shall be limited to structural and procedural subjects contained in Article IV.' Any offered amendment under the initiative obviously must comply with the procedure and limitations on amendment set out in section 3 before it can be submitted to the electorate. As this court has observed: 'The constitution is the supreme law *** and every court is bound to enforce its provisions.' [Citation.]" *Coalition I*, 65 Ill. 2d at 460.

The controlling legal principles are settled. The prior constitutions of this State did not provide for amendment through the direct initiative process. (*CBA*, 137 Ill. 2d at 398.) The Framers of the 1970 Illinois Constitution intended article XIV, section 3, to be a very limited form of constitutional initiative. The Framers considered that a general initiative provision was unnecessary due to the liberalized amendment procedures of the new constitution. (*CBA*, 137 Ill. 2d at 401.) The Framers also "expressed concern that a general initiative provision would be subject to abuse by special interest groups and might result in hasty and ill-conceived attempts to write

what should have been the subject of ordinary legislation into the Constitution." *Coalition I*, 65 Ill. 2d at 467.

Based on the Framers' concerns, article XIV, section 3, provides only for amendment of the legislative article, article IV. Further, not every aspect of the legislative article is subject to amendment through the initiative process. Rather, " 'Amendments shall be limited to structural *and* procedural subjects contained in Article IV.' " (Emphasis added.) *CBA*, 137 Ill. 2d at 398, quoting Ill. Const. 1970, art. XIV, § 3.

In *Coalition I*, this court held that the word "and" in the "structural and procedural" requirement means "and." Accordingly:

> "As commonly understood, the word 'and' would thus limit initiatives to amendments whose subjects would be both structural and procedural, such as a proposal for the conversion from a bicameral to a unicameral legislature or for the conversion from multiple- to single-member legislative districts. Giving effect to the language of section 3 would produce no absurdity or unreasonable result. This court is without authority to substitute 'or' for the 'and' the constitutional convention used in stating 'structural and procedural' unless a contrary intention is clearly manifested. We judge a contrary intention is not clearly manifested." *Coalition I*, 65 Ill. 2d at 466.

Applying these principles to the instant case, it is clear that the proposed amendment does not meet the "structural and procedural" requirement of article XIV, section 3. The eligibility or qualifications of an individual legislator do not involve the structure of the legislature *as an institution*. The General Assembly would remain a bicameral legislature consisting of a House and Senate with a total of 177 members, and would maintain the same organization.

Likewise, the eligibility or qualifications of an individual legislator do not involve any of the General Assembly's procedures. The *process* by which the General Assembly adopts a law would remain unchanged.

The dissent does not dispute these legal principles or the necessary result from an application of these principles to the proposed amendment. Rather, the dissent relies upon Justice Schaefer's dissent in *Coalition I* to argue that the word "and" in the "structural and procedural" requirement of article XIV, section 3, should mean "or." 161 Ill. 2d at 518-19 (Harrison, J., joined by Miller & Heiple, dissenting), relying on *Coalition I*, 65 Ill. 2d at 473-76 (Schaefer, J., dissenting).

However, even if the word "and" in the "structural and procedural" requirement meant "or," the result in this case would not change. As we explained, the proposed amendment does not meet *either* the structural or the procedural requirement of article XIV, section 3.

Further, and more fundamentally, the dissent relies upon a dissent and not the law as declared by this court. The doctrine of *stare decisis* is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. *Stare decisis* permits society to presume that fundamental principles are established in the law rather than in the proclivities of individuals. The doctrine thereby contributes to the integrity of our constitutional system of government both in appearance and in fact. *Stare decisis* is not an inexorable command. However, a court will detour from the straight path of *stare decisis* only for articulable reasons, and only when the court must bring its decisions into agreement with experience and newly ascertained facts. *Vasquez v. Hillery* (1986), 474 U.S. 254, 265-66, 88 L. Ed. 2d 598, 610, 106 S. Ct. 617, 624-25.

Specifically, "[a]lthough adherence to precedent is not rigidly required in constitutional cases, any departure from the doctrine of stare decisis demands special justification." (*Arizona v. Rumsey* (1984), 467 U.S. 203, 212, 81 L. Ed. 2d 164, 172, 104 S. Ct. 2305, 2311.) In the

present case, the Proponents have not shown any special justification for this court to depart from our holding in *Coalition I.*

For the foregoing reasons, the petition for a writ of *mandamus* in cause No. 77405 is dismissed; and the judgment of the circuit court of Cook County in cause No. 77566 is affirmed.

*No. 77405—Petition dismissed.*
*No. 77566—Judgment affirmed.*

JUSTICE HARRISON, dissenting:

These consolidated actions challenge an initiative to amend article IV of the Illinois Constitution (Ill. Const. 1970, art. IV). The initiative, for which 437,088 signatures were gathered, calls for the imposition of term limits on the members of our General Assembly. Although there is no dispute as to the technical sufficiency of the initiative petition, the Chicago Bar Association, its secretary and its executive director (hereinafter referred to collectively as the CBA) nevertheless claim that the voters of this State should be prevented from voting on the proposed amendment at the upcoming general election on November 8, 1994. Because the law does not support this claim, I dissent.

The facts are these. Two organizations, known as the Eight is Enough Committee and Term Limits Illinois (hereinafter referred to collectively as the Proponents), circulated a petition to amend subsections (a), (b), and (c) of section 2, article IV of our constitution (Ill. Const. 1970, art. IV, §§ 2(a), (b), (c)) by imposing a limitation on the number of years a member of the General Assembly may serve. As amended, the constitutional provisions would read as follows (additions are underlined):

"§ 2. Legislative Composition

(a) One Senator shall be elected from each Legislative District. Immediately following each decennial redistricting, the General Assembly by law shall divide the

Legislative Districts as equally as possible into three groups. Senators from one group shall be elected for terms of four years, four years and two years; Senators from the second group, for terms of four years, two years and four years; and Senators from the third group, for terms of two years, four years and four years. The Legislative Districts in each group shall be distributed substantially equally over the State. For the exclusive purpose of calculating of service under the tenure limitation contained in Section 2(c), a person who serves two years or less of a term of a Senator shall be deemed to have served two years and a person who serves more than two years of a four-year term of a Senator shall be deemed to have served four years.

(b) Each Legislative District shall be divided into two Representative Districts. In 1982 and every two years thereafter one Representative shall be elected from each Representative District for a term of two years. For the exclusive purpose of calculating length of service under the tenure limitation contained in Section 2(c), a person who serves any part of a term of a Representative shall be deemed to have served two years.

(c) To be eligible to serve as a member of the General Assembly, a person must be a United States citizen, at least 21 years old, and for the two years preceding his election or appointment a resident of the district which he is to represent. No person shall be eligible to serve as a member of the General Assembly for more than eight years. No person who has served six years in the General Assembly shall be eligible to be elected to a four-year term as a Senator. This tenure limitation is not retroactive and shall not apply to service as a member of the General Assembly before the second Wednesday in January, 1995. In the general election following a redistricting, a candidate for the General Assembly may be elected from any district which contains a part of the district in which he resided at the time of the redistricting and reelected if a resident of the new district he represents for 18 months prior to the reelection."

The Proponents circulated their petitions pursuant to article XIV, section 3, of our constitution (Ill. Const. 1970, art. XIV, § 3), which authorizes amendments to

article IV by means of the initiative process. Under that section, amendments to article IV may be proposed by a petition signed by a number of electors equal in number to at least 8% of the total votes cast for Governor in the preceding gubernatorial election. In the case before us here, the Proponents exceeded that number. They succeeded in obtaining the signatures of 437,088 voters, a number representing more than 13% of all those who voted for Governor in 1992, the last election for that office.

The Proponents filed their initiative petition with the Secretary of State on May 8, 1994, which was "at least six months before [the] general election" as required by article XIV, section 3. The Secretary of State, in turn, delivered the petition to the State Board of Elections (the Board) for a determination as to its validity and sufficiency under the Election Code (10 ILCS 5/1—1 *et seq.* (West 1992)). (10 ILCS 5/28—9, 1A—8(10) (West 1992).) No objections to the petition were filed with the Board (see 10 ILCS 5/28—4 (West 1992)), and the sample verification of signatures required by section 28—11 of the Election Code (10 ILCS 5/28—11 (West 1992)) revealed that enough of the signatures were valid so that the proposed amendment could be placed on the ballot.

Before the Board was able to officially declare the petition to be valid and to certify the proposed amendment for inclusion on the November 8 ballot (10 ILCS 5/28—12 (West 1992)), the CBA initiated the two legal proceedings now before us. The first, cause No. 77566, is an action for declaratory and injunctive relief filed in the circuit court of Cook County under the disbursement of public moneys statute (735 ILCS 5/11—301 *et seq.* (West 1992)). The second, cause No. 77405, seeks to invoke this court's original jurisdiction under article VI, section 4(a), of the Illinois Constitution (Ill. Const. 1970,

art. VI, § 4(a)) to obtain a writ of *mandamus*. 134 Ill. 2d R. 381.

Named as defendants in the circuit court action are the Board, its chairman, vice-chairman and members; the State Comptroller, Treasurer and Secretary of State; · the county clerk of Cook County; and the Chicago board of election commissioners, its chairman and members. These same parties are named as respondents in the *mandamus* proceeding. In addition, the Proponents and several of their members have been allowed to intervene both as defendants in the circuit court proceeding and as respondents in the original *mandamus* action before our court.

The substantive allegations of the circuit court complaint and the *mandamus* petition are identical. In each case, the CBA bases its claim on article XIV, section 3, of our constitution. That provision states that the initiative procedure may be used only for amendments to "structural and procedural subjects contained in Article IV." (Ill. Const. 1970, art. XIV, § 3.) The CBA asserts that this limitation means that any amendments proposed under section 3 must affect both the structure and procedure of the General Assembly. According to the CBA, however, the amendment proposed here affects neither the General Assembly's structure, nor its procedures. The CBA therefore contends that the amendment should be declared invalid and that the relevant government officials should be enjoined from expending public funds to include it on the November 8 ballot.

In cause No. 77405, we granted the CBA's motion for leave to file a writ of *mandamus*, established an expedited briefing schedule, and set the matter for hearing at a special session of court on July 21, 1994. During the course of that hearing, this court learned for the first time of the existence of the circuit court

proceeding now designated as cause No. 77566. We then issued an order directing the circuit court to enter judgment in that case by July 22, 1994, and to enter an automatic notice of appeal from that judgment. We further ordered that the appeal be transferred directly to this court pursuant to Rule 302(b) (134 Ill. 2d R. 302(b)) and consolidated with the *mandamus* proceeding.

In compliance with our order, the circuit court entered judgment in cause No. 77566 on July 22, 1994. That judgment declared the proposed amendment to be invalid, found that the CBA had established the requisite elements for injunctive relief, and permanently enjoined the expenditure of State funds for the amendment. An appeal was then taken according to our directions, and, by order of this court, no further briefing was allowed. The parties were left to stand on the briefs previously filed in cause No. 77405, and no additional oral argument was held. It is in this posture that the circuit court's judgment and the original petition for a writ of *mandamus* have now come before us for consideration.

As a preliminary matter, there is no question that the Proponents, as citizens and taxpayers, have standing to bring their circuit court action against the named State defendants pursuant to the disbursement of public moneys statute (735 ILCS 5/11—301 *et seq.* (West 1992)). That statute expressly authorizes any citizen and taxpayer to bring an action to restrain and enjoin the disbursement of public funds by any officer or officers of the State (735 ILCS 5/11—301 (West 1992)) where certain procedural requirements are met (735 ILCS 5/11—303 (West 1992)), as they were here. With respect to the claims against county officials in the circuit court and to the original *mandamus* proceeding in our court, the Proponents likewise have standing by virtue of this State's common law rules on taxpayer actions, which this court discussed in *Turkovich v. Board of Trustees of the University of Illinois* (1957), 11 Ill. 2d 460, 464.

Just as there is no question of standing, there can be no dispute that the case is ripe for adjudication. Illinois has rejected Federal law as to ripeness. (*Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 491.) Under the law of this State, a controversy is considered ripe when it has reached the point where the facts permit an intelligent and useful decision to be made. (*People v. Ziltz* (1983), 98 Ill. 2d 38, 42.) This is such a case.

Although the Board has not officially declared the petition valid and certified the proposition for the ballot, the parties do not assert that there is any technical impediment to approval. From the record before us, it appears that there are no further facts to be developed and no further acts to be performed except for mere formalities. Accordingly, unless the court intervenes, the proposed amendment will, in due course, be presented to the voters in November.

Under these circumstances, further delay will serve no useful purpose. To the contrary, it will defeat the CBA's objective in bringing suit, which is to stop any expenditure of public funds on a measure it claims is wholly improper. While it is true, as a general rule, that a court may not enjoin an election (*Fletcher v. City of Paris* (1941), 377 Ill. 89), we have recognized an exception to this rule where, as here, injunctive relief is sought to prevent the waste of public funds on a ballot proposition that is alleged to be in violation of the constitution. *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 460 (*Coalition I*); *Jordan v. Officer* (1987), 155 Ill. App. 3d 874, 877.

While standing and ripeness do not bar our resolution of this dispute, cause No. 77405 must nevertheless be dismissed. As noted at the outset of this discussion, that cause seeks to invoke this court's original jurisdiction over cases relating to *mandamus*. (Ill. Const. 1970,

art. VI, § 4(a); 134 Ill. 2d R. 381.) The problem is that this is not a proper subject for *mandamus*. This is so for several reasons. First, and most basic, the office of *mandamus* is to provide affirmative rather than prohibitory relief. (*Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 468.) In the case before us, however, the CBA requests relief which is prohibitory, rather than affirmative. Although the CBA has attempted to phrase its petition in terms which sound affirmative, what it really seeks is an order barring the named government officials from expending public money on the initiative or placing it on the ballot. This is plainly prohibitory in nature. The CBA's artful phraseology does not alter the substance of its claim.

Second, the constitution's grant of original *mandamus* jurisdiction does not give us a roving commission to pronounce justice whenever we think it might serve the public interest. The writ is an extraordinary remedy to enforce, as a matter of public right, "the performance of official duties by a public officer where no exercise of discretion on his part is involved." (*Madden v. Cronson* (1986), 114 Ill. 2d 504, 514.) Its purpose is to compel a public officer to perform a ministerial, nondiscretionary duty (see *People ex rel. Ryan v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1985), 136 Ill. App. 3d 818, 820) which the officer has failed to perform (see *AFSCME v. Illinois State Labor Relations Board* (1989), 187 Ill. App. 3d 585, 601) and to which the petitioner is entitled as a matter of right (see *Harris v. State* (1991), 212 Ill. App. 3d 13, 15).

Implicit in these principles is that *mandamus* will only lie to force a public official to do what the law requires him to do. Accordingly, use of the writ might be proper if the Board refused to certify a ballot measure which met all technical requirements of the Election Code (10 ILCS 5/1—1 *et seq.* (West 1992)). In

this case, however, there is no allegation that any of the officials named as defendants has failed or refused to perform any aspect of their official duties. To the contrary, the parties presume that those officials have fully complied with their statutory obligations and will continue to do so.

What the CBA's petition assails, instead, is the substantive validity of the term-limit initiative. This is not a question that any of the named officials have the power or authority to decide. (*Coalition I*, 65 Ill. 2d at 463.) Even if they did, the determination of whether an initiative meets the constitution's requirements for amendment is a decision that involves the exercise of judgment or discretion. Such decisions are not subject to review or correction by means of *mandamus*. (*Daley v. Hett* (1986), 113 Ill. 2d 75, 80.) The CBA's *mandamus* petition should therefore be dismissed.

Where, as here, an amendment proposed by initiative meets the requisite statutory requirements, but a party claims that it should be kept off the ballot on the grounds that it violates the terms of section 3, article XIV of our constitution (Ill. Const. 1970, art. XIV, § 3), the proper remedy is to bring a taxpayer action for injunctive relief in the circuit court. (*Coalition I*, 65 Ill. 2d at 461; see also *Chicago Bar Association v. State Board of Elections* (1990), 137 Ill. 2d 394; *Lousin v. State Board of Elections* (1982), 108 Ill. App. 3d 496.) As previously discussed, that is what the CBA did in cause No. 77566, and the circuit court's judgment in that cause is the only matter that is legitimately before us for review.

In reviewing the circuit court's judgment, a threshold question this court must consider is how the second sentence of article XIV, section 3 (Ill. Const. 1970, art. XIV, § 3), should be construed. That sentence provides that amendments by initiative are limited to "structural

and procedural subjects" contained in article IV. In *Co-alition I*, 65 Ill. 2d at 471, a majority of the court interpreted this provision to mean that amendments to article IV proposed by initiative had to affect both structure and procedure. For the reasons set forth by Justice Schaefer in his dissenting opinion in the case (*Coalition I*, 65 Ill. 2d at 473-76 (Schaefer, J., dissenting)), such a construction is untenable. Conventional principles of construction and English usage, together with the published reports and debates of the constitutional convention, yield the conclusion that amendments by initiative need not deal simultaneously with both procedural and structural subjects.

The sentence at issue here was included simply "to prevent use of initiative amendment to add substantive matter to the Constitution." (6 Record of Proceedings, Sixth Illinois Constitutional Convention 1561 (hereinafter cited as Proceedings).) As the court acknowledged in its last discussion of this provision,

> "the proposal and the debates reflected the intent that the limited initiative *not be used to accomplish substantive changes* in the constitution, but that the proposals pertain only to the basic qualities of the legislative branch— namely, structure, size, organization, procedures, etc. 6 Proceedings 1401.
>
> *** By so limiting the use of the initiative, the delegates sought to avoid the use of the initiative to incorporate into the constitution what in effect was legislation." (Emphasis in original.) *Chicago Bar Association*, 137 Ill. 2d at 403-04.

The proposed term-limit amendment challenged here would in no way produce a substantive change in the constitution. The proposal relates solely to the composition of the legislature as set forth in section 2 of article IV (Ill. Const. 1970, art. IV, § 2). Composition of the legislature was expressly mentioned by the drafters of our constitution as being among the matters subject to amendment by initiative under article XIV, section 3

(Ill. Const. 1970, art. XIV, § 3). Indeed, it was identified as being one of the "critical areas" subject to the initiative process. 4 Proceedings 2712.

The CBA argues, in the alternative, that the proposed amendment cannot be said to be "limited" to substantive or procedural changes within the meaning of article XIV, section 3 (Ill. Const. 1970, art. XIV, § 3), because it would have ancillary effects on "several rights flowing from other constitutional provisions outside of Article IV," including the right to vote, the right to associate with others for political ends, and the right of a candidate to a place on the ballot. The CBA does not dispute, however, that an amendment to change from a bicameral to a unicameral legislature would be a valid subject for an initiative under article XIV, section 3 (Ill. Const. 1970, art. XIV, § 3). Nor does it question the judgment in *Coalition for Political Honesty v. State Board of Elections* (1980), 83 Ill. 2d 236 (*Coalition II*)), where this court sanctioned an initiative proposal to amend article IV that involved a reduction of the size of the House of Representatives, abolition of cumulative voting, and whether representatives should be elected from single-member districts. (See *Coalition II*, 83 Ill. 2d at 253.) Although these matters affect the rights invoked by the CBA just as seriously as the proposal at issue here, the CBA offers no principled basis for distinguishing them.

This aside, it is difficult to envision any structural change to the legislature that would not have at least some residual effects on the right of candidates to run for election and the right of voters to cast ballots for the candidates of their choice. As a result, if the CBA's construction of article XIV were accepted, there would be almost no instance in which the legislative article could legitimately be amended by means of the initiative process. Section 3 of article XIV would be rendered a nullity.

Finally, the CBA contends that the proposed amendment is unconstitutionally vague and that it violates the prohibition against combining separate and unrelated questions in a single proposition. (See *Coalition II,* 83 Ill. 2d at 254.) This contention is meritless. All aspects of the proposal are closely related to one another, and the proposition suffers from no fatal ambiguity or vagueness.

Section 3 of article XIV (Ill. Const. 1970, art. XIV, § 3) was drafted and adopted as a check on the legislature's self-interest. (*Coalition II,* 83 Ill. 2d at 247.) Under the majority's judgment, that check has been lost. Without an initiative, there is no realistic possibility that a term-limit amendment can ever be realized.

Regardless of the wisdom of term limits, section 3 of article XIV (Ill. Const. 1970, art. XIV, § 3) reserved to the people of this State the right to advance this amendment and to vote on it once the technical requirements of the Election Code were satisfied, as they were here. While there may be legitimate legal defects in the proposed amendment, none have been advanced by the CBA in this case and none warrant the extraordinary measure of barring the matter from the November 8 ballot. Democracy should be permitted to take its course, as the drafters of our constitution intended. To hold that the law mandates a contrary result is a fiction that venerates the power of our incumbent legislators and demeans the intelligence of their constituents.

For the foregoing reasons, the judgment of the circuit court of Cook County in cause No. 77566 should be reversed. In cause No. 77405, the petition for a writ of *mandamus* should be dismissed. I therefore dissent.

JUSTICES MILLER and HEIPLE join in this dissent.