THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. NATHAN J. ANTOINE, JR., Defendant-Appellee.

Fourth District   No. 4—96—0490

Argued February 19, 1997.—Opinion filed March 5, 1997.

John C. Piland, State's Attorney, of Urbana (Heidi Ladd (argued), Assistant State's Attorney, and Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Duane E. Schuster (argued), both of State Appellate Defender's Office, of Springfield, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In April 1996, the State filed a petition to have defendant, Nathan J. Antoine, Jr., declared a sexually dangerous person, pursuant to the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 1994)). In May 1996, defendant filed a motion for involuntary dismissal, alleging that the two psychiatrists appointed to examine him did not agree that he was a sexually dangerous person. Following a hearing on the motion in May 1996, the trial court granted defendant's motion for involuntary dismissal. The State appeals and we reverse and remand.

## I. BACKGROUND

Section 1.01 of the Act defines a sexually dangerous person as:
"[One] suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who ha[s] demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children ***." 725 ILCS 205/1.01 (West 1994).

Section 4 of the Act provides that the trial court shall appoint two qualified psychiatrists to personally examine the defendant, ascertain whether he is sexually dangerous, and file with the court a written report of the examination result. 725 ILCS 205/4 (West 1994).

The trial court appointed psychiatrists Joseph Bohlen and Lawrence Jeckel to examine defendant. In April 1996, Dr. Bohlen submitted a report to the court concluding that defendant suffered from a mental disorder, sexual paraphilia (violent type), and, therefore, met the statutory criteria for a sexually dangerous person. In May 1996, Dr. Jeckel submitted a report to the court concluding that defendant

suffered from a character disorder but that he did not have a mental disorder. Dr. Jeckel's report stated, in relevant part, as follows:

"[Defendant] has the mentality of a rapist or a killer. He does not have a mental illness that would be classified on DSM-IV Axis I. His behavior is part of a character disorder, an enduring set of character traits characterized by deceit, drug use, and violent impulses toward women.

Therefore, although [defendant] has demonstrated criminal propensities toward acts of sexual assault in the past, he is not suffering from a mental disorder that has existed for one year."

Dr. Jeckel thus concluded that defendant did not meet the Act's criteria for a sexually dangerous person.

In May 1996, defendant filed a motion for involuntary dismissal because the two psychiatrists did not agree on whether defendant was a sexually dangerous person pursuant to the Act. Defendant contended that this court's decision in *People v. Cole*, 5 Ill. App. 3d 836, 284 N.E.2d 53 (1972), required dismissal under these circumstances. At the hearing on defendant's motion, the trial court questioned the reasoning in *Cole*, but dismissed the petition because the court believed *Cole* required it to do so.

## II. ANALYSIS

The State appeals, arguing that the trial court erred by dismissing the petition. The State contends that (1) the language of the statute does not require that both psychiatrists conclude that a defendant is sexually dangerous; and (2) to the extent that *Cole* holds that a trial court must dismiss a petition when the psychiatrists disagree, it is erroneous and should be overturned. In response, defendant argues that (1) the statute supports the trial court's dismissal; and (2) the doctrine of *stare decisis* requires this court to affirm, based on *Cole*. We agree with the State.

### A. Statutory Language

The State first contends that the Act contains no language that requires a trial court to dismiss a petition if both court-appointed psychiatrists do not agree that the defendant is a sexually dangerous person. Defendant responds that the entire Act must be construed in light of and consistent with section 3.01 of the Act, which places upon the State the burden of proving beyond a reasonable doubt that a defendant is a sexually dangerous person (725 ILCS 205/3.01 (West 1994)). Thus, defendant contends that if the court-appointed psychiatrists disagree, the State can never establish a *prima facie* case, and the trial court must dismiss the petition.

Section 4 of the Act reads as follows:

"After the filing of the petition, the court shall appoint two qualified psychiatrists to make a personal examination of such alleged sexually dangerous person, to ascertain whether such person is sexually dangerous, and the psychiatrists shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the respondent." 725 ILCS 205/4 (West 1994).

*Nothing* in this section indicates that the court-appointed psychiatrists must agree in their court-ordered assessments that defendant is a sexually dangerous person. Furthermore, no language in any other section of the Act explicitly states or even implies that a trial court must dismiss a petition if the psychiatrists do not so agree.

Defendant contends that the burden of proof requirement establishes a "constitutional imperative" that ultimately requires a trial court to dismiss if both psychiatrists do not report that defendant is a sexually dangerous person. He relies on cases that emphasize the need for criminal due process safeguards in proceedings under the Act. See *People v. Pembrock*, 62 Ill. 2d 317, 342 N.E.2d 28 (1976) (establishing the State's burden of proving a defendant's status beyond a reasonable doubt); *People v. Shiro*, 52 Ill. 2d 279, 287 N.E.2d 708 (1972) (establishing a defendant's right to counsel in seeking release under the Act); *People v. Olmstead*, 32 Ill. 2d 306, 205 N.E.2d 625 (1965) (establishing a defendant's rights to counsel and jury trial in proceedings under the initial petition and a later application for discharge). We are not persuaded by defendant's logic.

We acknowledge the importance of scrupulously ensuring the fairness of judicial proceedings that may result in indefinite commitment of a person determined to be sexually dangerous. See *Pembrock*, 62 Ill. 2d at 321, 342 N.E.2d at 29. However, we do not agree with defendant that the Act's burden of proof and the importance of due process safeguards mandate dismissal under the circumstances of this case.

In construing legislation, a court's task is to give effect to the legislature's intent in enacting the statute, which is best indicated by the statute's plain language. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110, 610 N.E.2d 1250, 1253 (1993). The Act contains no language that indicates the legislature intended a trial court to dismiss a petition where the court-appointed psychiatrists do not agree that the defendant is a sexually dangerous person, and we decline to read such a requirement into the Act.

### B. *Stare Decisis*

The State acknowledges that the *Cole* holding supports the trial

court's dismissal but argues that we should overrule *Cole*. Defendant responds that the doctrine of *stare decisis* requires us to reaffirm *Cole* and affirm the dismissal in this case.

In *Cole*, two court-appointed psychiatrists examined the defendant and submitted reports which conflicted as to whether he was sexually dangerous. *Cole*, 5 Ill. App. 3d at 837, 284 N.E.2d at 53. One psychiatrist testified at a hearing that the defendant was sexually dangerous; the other did not testify but submitted a report which concluded that the defendant was *not* a sexually dangerous person. The trial court found that because the *testimony* was uncontradicted, the State had established a *prima facie* case that the defendant was a sexually dangerous person. On appeal, this court held that "the clear implication of this statute is that both psychiatrists in their preliminary report[s] *** should find that [defendant] is a sexually dangerous person." *Cole*, 5 Ill. App. 3d at 837, 284 N.E.2d at 54. Because the psychiatrists' reports conflicted on this point, the State had not established a *prima facie* case, and this court reversed the trial court's finding that the defendant was a sexually dangerous person. *Cole*, 5 Ill. App. 3d at 838, 284 N.E.2d at 54.

■ *Stare decisis* is a policy of the courts to stand by precedent and leave settled points of law undisturbed. *Charles v. Seigfried*, 165 Ill. 2d 482, 492, 651 N.E.2d 154, 159 (1995). The supreme court recently addressed this doctrine and wrote the following:

> "The doctrine of *stare decisis* is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. *Stare decisis* permits society to presume that fundamental principles are established in the law rather than in the proclivities of individuals. The doctrine thereby contributes to the integrity of our constitutional system of government both in appearance and in fact. *Stare decisis* is not an inexorable command. However, a court will detour from the straight path of *stare decisis* only for articulable reasons, and only when the court must bring its decisions into agreement with experience and newly ascertained facts." *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510, 641 N.E.2d 525, 529 (1994).

*Stare decisis* considerations weigh heavily in the area of statutory construction, in part because a departure from precedent amounts to an amendment of the statute itself. *Froud v. Celotex Corp.*, 98 Ill. 2d 324, 336, 456 N.E.2d 131, 137 (1983). Indeed, such considerations are particularly strong when, as here, the legislature has amended the Act in question since the decision (that a party argues should be followed because of *stare decisis*) was rendered. In

particular, we note that the legislature—on more than one occasion—has amended section 3.01 of the Act, addressing the State's burden of proof. See Pub. Act 79—1365, § 19, eff. October 1, 1976 (1976 Ill. Laws 1060); Pub. Act 80—727, § 1, eff. October 1, 1977 (1977 Ill. Laws 2189); Pub. Act 81—661, § 7, eff. September 16, 1979 (1979 Ill. Laws 2516-17); Pub. Act 82—783, art. XI, § 80, eff. July 1, 1982 (1982 Ill. Laws 933-34).

■ When the legislature amends a statute but leaves unchanged provisions which have been judicially construed, the unchanged provisions ordinarily retain the construction given prior to the amendment. *People v. Agnew*, 105 Ill. 2d 275, 280, 473 N.E.2d 1319, 1322 (1985). The legislature is presumed to know of judicial interpretation of statutes; thus, its inaction suggests agreement with the judicial interpretation. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 388, 604 N.E.2d 929, 933 (1992); *Agnew*, 105 Ill. 2d at 280, 473 N.E.2d at 1322.

We also acknowledge that *stare decisis* commands greater respect when, as here, at issue is a judicial construction of a statute, as opposed to a constitutional provision. This is so because of the difficulty inherent in amending a constitution to overcome a judicial misinterpretation. Thus, courts must be willing to revisit decisions based upon constitutional interpretations to determine if those decisions deserve further adherence. See *Chicago Bar Ass'n*, 161 Ill. 2d at 510, 641 N.E.2d at 529; *Arizona v. Rumsey*, 467 U.S. 203, 212, 81 L. Ed. 2d 164, 172, 104 S. Ct. 2305, 2311 (1984) ("Although adherence to precedent is not rigidly required in constitutional cases, any departure from the doctrine of *stare decisis* demands special justification"). In contrast, because the legislature can easily amend statutes in response to—and to correct—judicial misinterpretations, the courts have much less need to take it upon themselves to second-guess precedent interpreting a particular statute. The courts can (and do) reasonably conclude that the legislature is likely to correct judicial misinterpretations, and therefore the courts need act only in the most extraordinary and compelling cases. In our judgment, the case before us presents just such an extraordinary and compelling circumstance, in part because this court's decision in *Cole* was so erroneous.

■ We can find no justification for this court's holding in *Cole*. As stated earlier, the statutory language does not support such a conclusion. Neither section 4 nor any other provision of the Act remotely addresses the procedural effect of conflicting psychiatric reports.

Moreover, it is unprecedented in Illinois law that a conflict in a material factual issue would bar a trier of fact from hearing evidence

on the issue and resolving it on the merits. Summary judgment proceedings exemplify this principle; a trial court may grant summary judgment only when *no* dispute exists as to material facts. 735 ILCS 5/2—1005(c) (West 1994).

Regarding defendant's argument about a "constitutional imperative" because of the State's burden of proving beyond a reasonable doubt that he is a sexually dangerous person, we note that section 6—2 of the Criminal Code of 1961 formerly required the State to prove beyond a reasonable doubt that a defendant asserting the insanity defense was *not* insane. See Ill. Rev. Stat. 1981, ch. 38, pars. 6—2, 6—4, 3—2. The legislature amended that section effective January 1, 1984, in 1983 to (1) shift the burden of proof to the defendant, and (2) change the burden of proof to a preponderance of the evidence. See Ill. Rev. Stat. 1983, ch. 38, par. 6—2(e); Pub. Act 83—288, § 1, eff. January 1, 1984 (1983 Ill. Laws 2035).

When the State still had the burden of proving a defendant was not insane, it was not uncommon for psychiatrists who had examined defendants to reach different conclusions. Yet, these differences did not prevent the State from meeting its heavy burden of proof. In *People v. Eckhardt*, 156 Ill. App. 3d 1077, 1090, 509 N.E.2d 1361, 1370-71 (1987), the second district addressed a murder case under the old insanity statute and wrote the following:

> "In deciding whether the State has proved the defendant sane beyond a reasonable doubt, the trier of fact must consider the totality of the evidence, weighing testimony and determining credibility of witnesses, both expert and lay, without being required by law to accept the opinions of psychiatrists regarding sanity. [Citation.] The trial judge is not obligated to accept the opinions of psychiatrists proffered by the defendant, but is entitled to consider contrary opinions of the State's expert witness. [Citation.] *The resolution of contradictory testimony by experts in the determination of whether the defendant was legally sane at the time of the crime and the determination of its weight and credibility are for the trier of fact.*" (Emphasis added.)

See also *People v. Taylor*, 110 Ill. App. 3d 112, 118, 441 N.E.2d 1231, 1235 (1982) ("In deciding the question of sanity, the trier of fact may accept [one] expert's opinion over another").

The same analysis applies to psychiatrists who disagree regarding whether a defendant is a sexually dangerous person. Not only may the trial court choose to believe one psychiatrist over another, but the court may do so and find in favor of the State's petition even when, as here, the State's burden is proof beyond a reasonable doubt. We add that the fact that the court appoints the examining

psychiatrists, under section 4 of the Act, as opposed to having them selected by the State and defendant, is irrelevant to the question of how the court—acting as trier of fact—should evaluate the psychiatrists' testimony.

Finally, the State points out in its brief—and we agree—that the *Cole* holding may lead to absurd results. The practical effect of *Cole* is that the State is barred from challenging the facts or beliefs that form the basis for the expert's opinion, and the trier of fact is precluded from hearing evidence on the issue. Thus, the *Cole* court's interpretation of the Act requires a trier of fact to delegate its decision-making authority to a third party. The legislature could not have intended such an absurd result. In construing legislation, a court should interpret it in a manner that is reasonable and will not produce absurd or unjust results that the legislature could not have intended. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 541, 605 N.E.2d 539, 542 (1992).

We also note that *Cole*, which was rendered by this court 24 years ago, has been cited only twice in that time. In *People v. Hodges*, 36 Ill. App. 3d 422, 425, 343 N.E.2d 565, 568 (1976), the third district referred to it in passing when addressing a different issue. In *People v. Becraft*, 74 Ill. App. 3d 407, 410, 393 N.E.2d 110, 112 (1979), this court seemingly backed away from its earlier decision in *Cole*, stating as follows: "[T]he Act does not state such a requirement [that both psychiatric reports must agree that defendant is a sexually dangerous person] ***." Thus, we need not be concerned that our ruling will result in confusion among the appellate districts. See *Cravens v. Inman*, 223 Ill. App. 3d 1059, 1075, 586 N.E.2d 367, 377 (1991).

In *Alvis v. Ribar*, 85 Ill. 2d 1, 24, 421 N.E.2d 886, 896 (1981), the supreme court addressed the doctrine of *stare decisis* in the context of a common law doctrine as follows:

> "The tenets of *stare decisis* cannot be so rigid as to incapacitate a court in its duty to develop the law. [Citation.] Clearly, the need for stability in law must not be allowed to obscure the changing needs of society or to veil the injustice resulting from a doctrine in need of reevaluation."

The decisions of this court ought to be soundly based; Illinois jurisprudence demands no less. *Cole* was wrong, is not soundly based, and we hereby overrule it.

Our decision here is not inconsistent with the supreme court's decision in *Olmstead* on which the *Cole* court ostensibly relied. In *Olmstead*, both court-appointed psychiatrists agreed that the defendant was sexually dangerous, but only one testified. The circuit court granted the State's petition and the supreme court affirmed, stating:

"We find no requirement in the [A]ct that both psychiatrists shall testify, and we feel that the testimony of one may provide a *prima facie* case in the absence of contradictory reports." *Olmstead,* 32 Ill. 2d at 312, 205 N.E.2d at 629. The supreme court in *Olmstead* did not address the question of how to proceed if the psychiatrists file contradictory reports. Thus, the *Cole* court went far beyond *Olmstead* when it *dismissed* the State's petition based on the conflicting reports.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's dismissal of the State's petition and remand for further proceedings.

Reversed and remanded.

McCULLOUGH and KNECHT, JJ., concur.