NO. 4-06-0344    Filed 6/25/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MARJORIE O'CASEK, as Special          )    Appeal from
Administratrix of the Estate of CARLA )    Circuit Court of
THOMPSON, Deceased,                   )    McLean County
          Plaintiff-Appellant,        )    No. 04L160
          v.                          )
THE CHILDRENS HOME AND AID SOCIETY OF )
ILLINOIS, a/k/a THE CHILDREN'S        )
FOUNDATION; OSF ST. JOSEPH MEDICAL    )
CENTER; OSF ST. JOSEPH HEALTHCARE     )
SYSTEMS, a/k/a OSF ST. JOSEPH MEDICAL )
CENTER; SUSAN G. EMMERSON, M.D.; and  )    Honorable
RICHARD D. CASTILLO, M.D.,            )    James E. Souk,
          Defendants-Appellees.       )    Judge Presiding.
_____

          JUSTICE COOK delivered the opinion of the court:

          This case arises out of medical treatment given to the

17-year-old decedent, Carla Thompson, in August 2000.  Plaintiff,

Marjorie O'Casek, the special administratrix of Thompson's

estate, filed a medical-malpractice claim in August 2002 against

defendants, the Children's Home and Aid Society of Illinois

(CHASI), OSF St. Joseph Healthcare Systems (OSF), and treating

physicians Dr. Susan G. Emmerson and Dr. Richard D. Castillo.

          Plaintiff originally filed her complaint in August

2002.  She voluntarily dismissed the complaint in February 2003

and refiled in February 2004.  Plaintiff's refiled complaint did

not contain the physician's report as required by section 2-

622(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-622(a)(1)

(West 2004)), and instead plaintiff attached an affidavit under

subsection (a)(2), requesting an additional 90 days to file a physician's report.

Defendants filed a motion to dismiss pursuant to this court's decision in Cargill v. Czelatdko, 353 Ill. App. 3d 654, 818 N.E.2d 898 (2004) (Fourth District), appeal denied, 214 Ill. 2d 528, 830 N.E.2d 1 (2005). Cargill held that Public Act 90-579 (Pub. Act 90-579, §5, eff. May 1, 1998 (1998 Ill. Laws 48, 48)) resurrected language held unconstitutional in Best v. Taylor Machine Works, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997). This "resurrected" language required an affiant requesting a 90-day extension under subsection (a)(2) to state that she had not previously voluntarily dismissed an action based on the same acts. On April 18, 2005, the trial court, relying on Cargill, dismissed plaintiff's complaint with prejudice, reasoning that because plaintiff would never be able to state that she had not previously voluntarily dismissed an action based on the same acts, she would never be able to comply with the statute.

On May 17, 2005, plaintiff filed a motion to reconsider and, on September 23, 2005, a supplement thereto, alleging for the first time that Cargill was wrongly decided. The trial court denied plaintiff's motion to reconsider.

After this court decided Cargill, the legislature amended section 2-622 by Public Act 94-677 (Pub. Act 94-677, §330, eff. August 25, 2005 (2005 Ill. Laws 4964, 4995-98)). As

section 2-622(a)(2) stands at the time of this opinion, there is no language concerning voluntary dismissals. 735 ILCS 5/2-622(a)(2) (West Supp. 2005). In fact, Public Act 94-677's prefatory language to the newly amended version of section 2-622 essentially disowned the voluntary-dismissal language that had been declared unconstitutional in Best, stating the "[t]ext of [s]ection [2-622] [is] WITHOUT the changes [held unconstitutional in Best]." (Capitalization in original.) Pub. Act 94-677, §330, eff. August 25, 2005 (2005 Ill. Laws at 4964, 4995). According to the 2005 legislature, the voluntary-dismissal language disappeared with Best and was never reenacted. Accordingly, we reverse and remand.

## I. BACKGROUND

On August 29, 2000, decedent Thompson underwent an elective tonsillectomy procedure at OSF. Thompson was a 17-year-old, mentally retarded ward of the state who resided at CHASI. Thompson was sent back to CHASI on the day of her surgery and apparently fell into cardiac and respiratory failure the next day. Thompson returned to OSF, where she died of broncho-pneumonia. Plaintiff alleges that defendants did not properly respond to Thompson's complaints and symptoms of bronchopneumonia, that they did not properly administer antibiotics, and that the medical defendants negligently nicked or stabbed Thompson's uvula (the small, mucus-covered muscle that

hangs down in the back of the throat), which led to infection.

On August 30, 2002, plaintiff filed an amended complaint and attached an affidavit under section 2-622(a)(2), requesting an additional 90 days to obtain a physician's report as required by section 2-622(a)(1). 735 ILCS 5/2-622(a)(1), (a)(2) (West 2002). On December 23, 2002, after more than 90 days had passed, Dr. Emmerson filed a section 2-619 motion to dismiss the complaint on the ground that plaintiff had not complied with section 2-622(a)(1). 735 ILCS 5/2-619, 2-622(g) (West 2002). On February 18, 2003, before the trial court had ruled on Dr. Emmerson's motion, plaintiff moved to voluntarily dismiss the complaint without prejudice, which the trial court granted.

On February 23, 2004, plaintiff refiled her complaint. Again plaintiff attached an affidavit stating that plaintiff had been unable to file the written report as required by section 2-622(a)(1) and requested a 90-day extension to file the same. On May 21, 2004, within 90 days of refiling, plaintiff filed a physician's report authored by Dr. James Bryant.

Between February and April 2005, defendants each filed motions to dismiss the complaint on the ground that, pursuant to section 2-622(a)(2), in order to benefit from the 90-day extension period, plaintiff's affidavit must indicate that plaintiff had not previously voluntarily dismissed an action

based on the same or substantially the same acts. 735 ILCS 5/2-622(a)(2) (West 2004). Defendants argued that because plaintiff would never be able to truthfully state that she had not previously voluntarily dismissed the action, plaintiff could never comply with the requirements of section 2-622.

On April 18, 2005, the trial court held a hearing on defendants' motions to dismiss. Plaintiff did not dispute the precedential legitimacy of Cargill at the motion-to-dismiss hearing. The trial court found that section "[2-]622 says what it says, which is that on a refiling after a voluntary dismissal, *** you don't get a second [chance to refile the] certificate within 90 days."

On May 17, 2005, plaintiff filed a motion to reconsider, and on September 23, 2005, plaintiff filed a supplement to said motion. Plaintiff basically argued that Cargill, which held that Public Act 90-579 reenacted language prohibiting 90-day extensions upon refiling after a voluntary dismissal, was wrongly decided. Plaintiff argued that, when she refiled her complaint in February 2004, the statute did not prohibit 90-day extensions for plaintiffs who had previously voluntarily dismissed.

In November 2005, defendants filed motions to strike plaintiff's motion to reconsider and supplement thereto on the ground that plaintiff inappropriately raised new arguments that

could have been raised at the motion-to-dismiss hearing.  On February 28, 2006, the trial court held a hearing on plaintiff's motion to reconsider and supplement thereto.  Defendants' primary argument was that the trial court should not even reach the merits of plaintiff's new Cargill argument because it was not timely made.  On the merits, defendants argued that Cargill was correctly decided.  The trial court stated that it would take the matter under advisement.

On March 22, 2006, the trial court denied plaintiff's motion to reconsider in a docket entry.  This appeal followed.


## II. ANALYSIS

The issue in this case involves the relationship between Public Act 89-7, addressed by this court in our 2004 Cargill decision, and the legislature's subsequent amendment, Public Act 94-677, effective August 25, 2005.

### A. The Cargill Decision and the Legislative History of Section 2-622 Through the Release of Cargill

In Cargill, the plaintiffs voluntarily dismissed their complaint because they were unable to obtain a physician's report as required by section 2-622(a)(1).  The plaintiffs then refiled their complaint and asked for a 90-day extension to obtain the physician's report.  In sum, the defendants argued that the version of section 2-622 in effect at the time the plaintiffs refiled their complaint did not allow 90-day extensions for

- 6 -

plaintiffs who had previously voluntarily dismissed an action based on the same acts.  <u>Cargill</u>, 353 Ill. App. 3d at 656, 818 N.E.2d at 901.  This court agreed.

In 1995, the legislature passed the sweeping Civil Justice Reform Amendments and, through Public Act 89-7, amended section 2-622(a)(2) to prohibit 90-day extensions for those plaintiffs who had previously voluntarily dismissed their complaints.  Pub. Act 89-7, §15, eff. March 9, 1995 (1995 Ill. Laws 284, 291 (amending 735 ILCS 5/2-622 (West 1994))).  Pursuant to Public Act 89-7, subsection (a)(2) contained the following underlined additions:

> "[Plaintiff's attorney shall attach an affidavit that states] <u>[t]hat the plaintiff has not previously voluntarily dismissed an action based upon the same or substantially the same acts, omissions, or occurrences</u> and that the affiant was unable to obtain a consultation required by paragraph 1 because a statute of limitations would impair the action."  (Emphasis added.)  735 ILCS 5/2-622(a)(2) (West 1996) (hereinafter referred to as the "civil-reform" version of section 2-622).

In 1997, the Illinois Supreme Court in <u>Best</u>, 179 Ill. 2d 367, 689

N.E.2d 1057, found "core provisions" of Public Act 89-7 unconstitutional and voided the entire act on the principle of inseverability. Cargill, 353 Ill. App. 3d at 658, 818 N.E.2d at 902. The effect of Best was to make the civil-reform version of section 2-622 void ab initio. See, for example, People v. Gersch, 135 Ill. 2d 384, 390, 553 N.E.2d 281, 283 (1990) (when a statute is declared unconstitutional in its entirety, it is void ab initio). The law is returned to its state prior to the adoption of the unconstitutional statute. Gersch, 135 Ill. 2d at 390, 553 N.E.2d at 283. As applied here, this means that the pre-1995 version of section 2-622 once again became effective. The pre-1995 version of section 2-622(a)(2) did not contain any language regarding voluntary dismissals or any other qualifications on the 90-day extension period.

On February 4, 1998, less than two months after the Best decision was released, the legislature passed Public Act 90-579 (Pub. Act 90-579, eff. May 1, 1998 (1998 Ill. Laws 48)). Section 5 of Public Act 90-579 added the following underlined language to subsection (a)(1):

"If the affidavit is filed as to a defendant who is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, a psychologist, or a

- 8 -

naprapath, the written report must be from a health professional licensed in the same profession."  Pub. Act 90-579, §5, eff. May 1, 1998 (1998 Ill. Laws 48, 49) (hereinafter referred to as the "naprapath" amendment to section 2-622).

Public Act 90-579 then repeated the civil-reform version of section 2-622(a)(2), which prohibited a 90-day extension upon refiling after a voluntary dismissal, showing no additions or deletions were made by Public Act 90-579.  Cargill, 353 Ill. App. 3d at 660-61, 818 N.E.2d at 904-05.

As stated above, we held in Cargill that Public Act 90-579, which contained the naprapath amendment, resurrected the civil-reform version of section 2-622.  Cargill, 353 Ill. App. 3d at 659-60, 818 N.E.2d at 904-05.  We went on to hold that the civil-reform version of section 2-622(a)(2) plainly stated that if a physician's report is not attached to the complaint, the plaintiff must attach an affidavit indicating she has not previously dismissed an action based on the same or substantially the same acts.  Cargill, 353 Ill. App. 3d at 661, 818 N.E.2d at 905.  Further, we held that because the plaintiffs would never be able to truthfully state that they had not voluntarily dismissed their complaint, the plaintiffs' complaint was rightfully dismissed with prejudice.  Cargill, 353 Ill. App. 3d at 663, 818

- 9 -

N.E.2d at 906.

In holding that Public Act 90-579 resurrected the civil-reform version of section 2-622(a)(2), this court relied on the presumption that where statutes are enacted after judicial opinions are published, the legislature acted with the knowledge of prevailing case law. Cargill, 353 Ill. App. 3d at 658, 818 N.E.2d at 903. In other words, any repetition of the language contained in the civil-reform version of section 2-622 must have been a purposeful reenactment of said version because the legislature was presumably aware that the civil-reform version had been declared unconstitutional in Best.

B. Legislative Actions Subsequent to Cargill

In 2005, in amending section 2-622 through Public Act 94-677, the legislature explicitly rejected the civil-reform version of section 2-622, stating the "[t]ext of [s]ection [2-622] [is] WITHOUT the changes made by P.A. 89-7, which has been held unconstitutional." (Capitalization in original.) Pub. Act 94-677, §330, eff. August 25, 2005 (2005 Ill. Laws 4964, 4995). Public Act 94-677 repeated the pre-1995 version of section 2-622 as a source or template (with the exception that the "naprapath" amendment made by Public Act 90-579 was inserted into the pre-1995 version of subsection (a)(1)), and made the following underlined additions to subsection (a)(2):

"2. That the affiant was unable to

- 10 -

obtain a consultation as required by paragraph 1 because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. If an affidavit is executed pursuant to this paragraph, the affidavit and written report required by paragraph 1 shall be filed within 90 days after the filing of the complaint. No additional 90-day extensions pursuant to this paragraph shall be granted, except where there has been a withdrawal of plaintiff's counsel." 735 ILCS 5/2-622(a)(2) (West Supp. 2005) (as enacted by Pub. Act 94-677, §330, eff. August 25, 2005 (2005 Ill. Laws 4964, 4997)).

In repeating the pre-1995 version of section 2-622 as a source to surround the amendments made by Public Act 94-677, the legislature was fulfilling its requirements under section 8(d) of the Illinois Constitution. Ill. Const. 1970, art. IV, §8(d). Section 8(d) requires that a bill amending a law shall set forth completely the section amended. Ill. Const. 1970, art. IV, §8(d). Generally, portions of the old law that are repeated either literally or in substance should not be taken as a "new

- 11 -

enactment" but rather as a "continuation" of the old law.  People v. Bullard, 61 Ill. 2d 277, 281, 335 N.E.2d 465, 468 (1975); U.S. Bank National Ass'n v. Clark, 216 Ill. 2d 334, 354, 837 N.E.2d 74, 86 (2005); 5 ILCS 70/2 (West 1998).

Given the 2005 passage of Public Act 94-677 and its accompanying amendments to section 2-622, the question now becomes "when did the civil-reform language, including the voluntary-dismissal language, disappear from the statute"?  According to Public Act 94-677, the civil-reform language disappeared with Best and was never reenacted.  This is clear from the fact that the legislature specifically rejected the civil-reform version of section 2-622 as a source for its 2005 amendments and instead "continued" the pre-1995 version of the statute (with the exception of the naprapath amendment).  The legislature recognized Public Act 90-579 for its naprapath amendment, but not, in contradiction to Cargill's assessment of Public Act 90-579's effect, for any reenactment of the civil-reform language.

### D. Remaining Arguments

Though not dispositive of our ruling, we address defendants' remaining arguments.  Defendants argue that the principles of waiver, stare decisis, and statutory interpretation should have prevented us from reexamining Cargill.

Where new issues are raised for the first time in a

motion to reconsider or supplement thereto, and where there is a reasonable explanation for why the additional issues were not raised at the original hearing, the trial court has the discretion to address them.  Delgatto v. Brandon Associates, Ltd., 131 Ill. 2d 183, 195, 545 N.E.2d 689, 695 (1989). Defendants argue that the trial court properly exercised its discretion in dismissing plaintiff's motion to reconsider pursuant to Delgatto.  However, the record here does not indicate that the trial court denied the motion to reconsider based on untimeliness--the trial court might just have likely denied the motion because the doctrine of stare decisis would have prevented the trial court from overruling Cargill in order to find for plaintiff on the merits.  See, for example, Schramer v. Tiger Athletic Ass'n of Aurora, 351 Ill. App. 3d 1016, 1020, 815 N.E.2d 994, 996 (2004) ("a circuit court must follow the precedent of the appellate court of its district").

On a related note, the doctrine of waiver does not prevent us from addressing the merits of plaintiff's argument, especially where plaintiff's argument on appeal invokes this court's duty to maintain a sound body of precedent.  See Illinois State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 664, 837 N.E.2d 922, 930 (2005); see also In re Estate of Funk, 221 Ill. 2d 30, 96-97, 849 N.E.2d 366, 403 (2006) (waiver is a limitation on the parties and not on the courts).

Likewise, the doctrine of stare decisis does not prevent us from reexamining Cargill. "'The doctrine of stare decisis "expresses the policy of the courts to stand by precedents and not to disturb settled points." [Citations.]'" People v. Sharpe, 216 Ill. 2d 481, 519, 839 N.E.2d 492, 516 (2005), quoting Vitro v. Mihelcic, 209 Ill. 2d 76, 81, 806 N.E.2d 632, 634 (2004). Typically, stare decisis considerations are to be given great weight in the area of statutory construction. People v. Antoine, 286 Ill. App. 3d 920, 924, 676 N.E.2d 1374, 1377 (1997) (Fourth District). This is because departure from the precedent amounts to an amendment to the statute itself. Antoine, 286 Ill. App. 3d at 924, 676 N.E.2d at 1377. Further, because the legislature is presumed to know of judicial interpretation of statutes, the legislature's inaction suggests agreement with the judicial interpretation. Antoine, 286 Ill. App. 3d at 925, 676 N.E.2d at 1377.

Stare decisis is not an "inexorable command." Sharpe, 216 Ill. 2d at 519, 839 N.E.2d at 516. Prior decisions may only be overturned for good cause, compelling and articulable reason, or to bring the court's prior ruling on the issue into agreement with experience and newly ascertainable facts. Chicago Bar Ass'n v. Illinois State Board of Elections, 161 Ill. 2d 502, 510, 641 N.E.2d 525, 529 (1994). Here, as discussed above, Public Act 94-677, not in existence when this court decided Cargill, consti-

- 14 -

tutes "newly ascertainable information" that is sufficiently compelling to break from the doctrine of <u>stare</u> <u>decisis</u> in order to reexamine <u>Cargill</u>.

Finally, the rules of statutory construction do not prevent this court from examining the legislative history of section 2-622. Defendant Emmerson argues that it is not proper for this court to examine the legislative history of section 2-622 where the language of section 2-622 as set forth in Public Act 90-579 is clear and unambiguous. <u>Land v. Board of Education of the City of Chicago</u>, 202 Ill. 2d 414, 426, 781 N.E.2d 249, 257 (2002) ("[o]nly if the statutory language is ambiguous may we consider extrinsic aids for construction, such as legislative history, to determine legislative intent"). Defendant Emmerson's argument misunderstands the issue. The question is not whether the civil-reform version of section 2-622, if validly resurrected, plainly prohibits a 90-day extension where a plaintiff has previously voluntarily dismissed. The question is whether Public Act 90-579 <u>did</u> <u>in</u> <u>fact</u> <u>resurrect</u> the civil-reform version of section 2-622. We now conclude it did not.

### III. CONCLUSION

Because Public Act 90-579 did not reenact the civil-reform language regarding voluntary dismissals, plaintiff in the instant case was not statutorily prohibited from receiving a 90-day extension to file the medical report. Accordingly, we

- 15 -

reverse and remand this case to the trial court.

Reversed and remanded.

MYERSCOUGH, J., concurs.

KNECHT, J., dissents.


JUSTICE KNECHT, dissenting:

Simply put, Cargill, 353 Ill. App. 3d 654, 818 N.E.2d 898, appeal denied, 214 Ill. 2d 528, 830 N.E.2d 1 (2005), was correctly decided, and we should affirm.

The majority uses a flawed approach to the issue. The legislative correction encompassed by Public Act 94-677 was a response to what may have been a mistake in Public Act 90-579. Public Act 90-579 resurrected the voluntary-dismissal language at issue in this case by printing it in the Act. That may not have been the legislature's intent. Perhaps no one recognized Public Act 90-579 would be interpreted to resurrect the voluntary-dismissal language. If this was a legislative miscue, the chalk was reapplied by the enactment of Public Act 94-677. However, during the time period between the miscue in Public Act 90-579 and the correction in Public Act 94-677, the law required an affiant requesting a 90-day extension to file a physician's report to state she had not previously voluntarily dismissed an action based on the same acts.

The trial court properly relied on our precedent established in <u>Cargill</u> to dismiss plaintiff's complaint with prejudice.  The majority proposes to reverse that careful adherence to precedent by deferring to a later legislative enactment that attempts to say that is not what the law was because that is not what we wanted it to be.  The legislature does not interpret its enactments--the courts do.  We have done so, and we should adhere to precedent.