**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250332-U

Order filed June 5, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re the* COMMITMENT OF WILLIE WYATT, JR. | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | Appeal No. 3-25-0332 Circuit No. 21-MR-16 |
| v. | ) ) | |
| Willie Wyatt, Jr., | ) ) | Honorable Kathy S. Bradshaw Elliot, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Brennan and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court did not err in finding that the State met its burden of proving beyond a reasonable doubt that respondent was a sexually violent person even though two experts offered differing opinions; the court did not abuse its discretion when it detained respondent to a secure facility for further treatment.

¶ 2     Respondent, Willie Wyatt, Jr., appeals the Kankakee County circuit court's decision finding him a sexually violent person (SVP). He contends that the experts' differing opinions regarding whether he should be labeled as such constituted reasonable doubt. He also appeals the

court's decision to detain him in a secure facility, arguing that he should have been placed on conditional release. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On January 13, 2021, the State filed a petition against Wyatt pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2020)), seeking to have Wyatt adjudicated an SVP and committed to the care and custody of the Department of Human Services (DHS). The petition alleged that Wyatt had previously been convicted of aggravated criminal sexual assault, which is a sexually violent offense as defined by the Act. *Id.* § 5(e)(1). Wyatt had been evaluated by a clinical psychologist who had diagnosed him as suffering from a qualifying mental disorder. Finally, the petition alleged that Wyatt was dangerous to others because these mental disorders made it substantially probable that he would commit acts of sexual violence in the future. The circuit court found probable cause to believe Wyatt was an SVP and ordered him detained pending an evaluation by DHS and a trial regarding whether he should be found to be an SVP.

¶ 5        Wyatt waived a jury trial and proceeded to a bench trial on September 26, 2023. The State called Doctor Amy Louck Davis as its expert witness. She testified that she conducted an evaluation to determine whether Wyatt met the criteria to be found an SVP. In order to reach her opinion, she reviewed Wyatt's criminal, medical, and psychiatric history and conducted an interview.

¶ 6        Louck Davis found four instances of sexual assault in Wyatt's criminal history that she found pertinent to her evaluation. These instances began in 1987, when Wyatt was 23 years old, and spanned to 2002 when he was incarcerated for prior crimes. While incarcerated, Wyatt

2

received 45 disciplinary infractions, including one for fighting. Louck Davis noted an ongoing pattern of violence and a pattern of reoffending after release.

¶ 7 She diagnosed Wyatt with two mental disorders—other specified paraphilic disorder and substance use disorder. The other specified paraphilic disorder included an attraction to the use of force and sexual attraction to nonconsensual sexual activity that causes significant problems in a person's life or threatens to cause harm to others. Regarding his substance abuse disorder, Louck Davis explained that Wyatt had a history of alcohol abuse and cocaine use that had a negative impact on his life. Particularly, he had difficulty building general tolerance, building relationships, and choosing how to spend his time, money, and energy. He also made poor choices while under the influence, and his sexual offenses sometimes occurred while he was under the influence of drugs or alcohol. Wyatt admitted to seeking the use of pharmaceuticals while incarcerated.

¶ 8 After making these diagnoses, Louck Davis performed a risk assessment. One of the criteria she utilized in conducting these assessments was whether a person's mental disorder impacts their volitional control, specifically, whether there is a likelihood of future violent sexual offenses. She stated that Wyatt's mental disorders impacted his ability to make good judgments about sexual behaviors. This conclusion was also supported by Wyatt's commission of sexually violent offenses after he was released from incarceration after his first conviction. Louck Davis used Static-99R and Static-2002R actuarial instruments during her assessment because these tools were the most specifically related to Wyatt's circumstances and the evaluation she was tasked to perform. The use of these instruments was also supported by recognized research and studies.

¶ 9 Wyatt scored a six on the Static-99R assessment, placing him in a range considered well above average and in the highest of five score ranges. Louck Davis explained that sex offenders receiving Wyatt's score were 3.77 times more likely to reoffend compared to the average sex

3

offender. Wyatt registered a score of five on the Static-2002R instrument, which was in the above average and second highest range. Sex offenders scoring a five under this assessment tool are two times as likely to commit another sex offense.

¶ 10        Louck Davis also discussed Wyatt's current age because age 60 is considered the age when changes related to sexual behavior manifest and tends to lower risk assessment scores. Wyatt turned 60 only three days after trial. While Louck Davis testified that she took Wyatt's impending age into account, she used his current age of 59 in calculating his actuarial scores. She did not believe his impending birthday had a significant impact on her opinion. She explained that even though "a person at 11:59 on Friday scores one way and at 12:02 scores another way because they're now officially age 60 does not have significant impact ultimately on my risk consideration."

¶ 11        Louck Davis next explained the dynamic risk factors she considered, including deviant sexual interest, sexualized violence, tolerance of sexual offenses, history of nonsexual crimes, childhood environment, and conflicts in relationships. She also considered the protective factors that could mitigate Wyatt's risk including age, any debilitating medical conditions, and completion of sex offender treatment. She did not consider Wyatt's age to be a protective factor because it was already factored into her risk assessment due to the actuarial instruments she used. Regarding his medical condition, Louck Davis stated that Wyatt had some hearing loss, took medication for high cholesterol, and sometimes had to walk with a cane because he has pain in his knees. None of those conditions were debilitating. He had not yet completed a sex offender treatment program but was in the second phase of a five-phase program and was working on accepting responsibility for his actions. Louck Davis opined that Wyatt posed a substantially probable threat of reoffending and met the requirements to be found an SVP.

4

¶ 12    Doctor John Arroyo testified on Wyatt's behalf. Like Louck Davis, he reviewed Wyatt's criminal history and the accompanying police reports to reach his opinion. Arroyo used the age of 60 when performing the actuarial testing because he believed the scoring was based on age at the time of release. He explained that his score would be higher if he used Wyatt's actual age of 59; however, any potential release would not occur until Wyatt was 60 years old. The court asked Arroyo at what point he rounds up in age, and Arroyo indicated that if Wyatt's birthday had been thirty days away from any potential release, he would have provided an opinion based on both ages and let the court determine which assessment to apply.

¶ 13    Arroyo found that Wyatt had committed a qualifying sexual offense and diagnosed Wyatt with other specified paraphilic disorder, sexually aroused to nonconsenting partners, other specified personality disorder with antisocial features, and stimulant use disorder.

¶ 14    Based on his evaluation, Arroyo concluded that Wyatt was not substantially likely to reoffend and thus did not qualify as an SVP. Arroyo utilized the same Static-99R and Static-2002R instruments that Louck Davis did. However, he also used VRS-SO, another actuarial instrument. Arroyo explained that while VRS-SO was not traditionally used, he believed it provided a more qualified assessment of Wyatt's risk. It considers dynamic risk factors rather than solely static factors the other actuarial instruments accounted for. Without the VRS-SO, Wyatt had a 25% risk to reoffend, but his score dropped to a range of 8-20% risk when the VRS-SO was considered. Based on this score, Arroyo opined that Wyatt was not substantially probable to reoffend.

¶ 15    The court questioned Arroyo regarding his report of Wyatt's scores on the Static-99R and Static-2002R assessments. While Arroyo calculated Wyatt's scores on each at three, an average risk, he agreed that his report indicated Wyatt was more akin to those of higher risk. Regarding the Static-99R, his report read that Wyatt's recidivism risk is "best represented by the rate for the

5

High Risk/Need samples." The section of his report relating to the 2002R indicated that "Mr. Wyatt most closely resembles someone from the High Risk/Needs sample."

¶ 16 Closing arguments occurred on November 30, 2023. Wyatt argued that the court should not find him to be an SVP because reasonable doubt existed. He also argued that Arroyo's testing and opinion should be given greater weight because the assessment scores he provided were meant to consider Wyatt's risk of reoffending at the time of release, which would be 60 years old. Considering that Louck Davis and Arroyo were equally qualified yet offered such different opinions, Wyatt argued that their opinions created reasonable doubt. He added that were the court to find one more credible than the other, it would be the equivalent of "flipping a coin." He also emphasized that it was the State's burden to prove that Arroyo's interpretation was incorrect or should not be followed.

¶ 17 The State argued for the SVP finding. When discussing the issue regarding the proper age to be used in the assessment, it reiterated that Louck Davis testified that the use of age 60 instead of 59 would make no difference.

¶ 18 The court found that Wyatt had committed a qualifying sexual offense and that he had a qualifying mental disorder. In considering the last element of whether Wyatt's mental disorders made it more probable that he would reoffend, the court noted that it considered Louck Davis's use of the actuarial instruments Static-99R and Static-2002R to be the most accurate. It also found that there were essentially no protective factors in this case. Age was not considered a protective factor because it was factored into the actuarial instruments. Moreover, it found that Wyatt's medical conditions were not serious or debilitating in a manner that would mitigate any risk.

¶ 19 Regarding the tests Arroyo conducted, the court noted that he placed Wyatt in the average category for both Static-99R and Static-2002R but that Wyatt also resembled someone in a high

risk needs sample. It concluded that Arroyo could not clearly explain why he used the VRS-SO instrument that he began using the year prior. The court found Louck Davis's evaluation and opinion more credible due to the lack of explanation and support for using the VRS-SO, as well as the fact that the VRS-SO did not consider recidivism in cases specifically involving victims who were minors. The court noted two of Wyatt's victims were minors. The State therefore met its burden of proof that Wyatt was an SVP.

¶ 20　　　　The matter was continued for a dispositional hearing at which Louck Davis recommended Wyatt be detained for inpatient treatment rather than conditional release. She testified that Wyatt was in phase three of a five-phase treatment program. Each phase included many components, and he had been in phase three for approximately a year and a half. Louck Davis wished for him to complete phase four, which focused on relapse prevention, and into phase five, which she described as "walking the walk, and so practicing these things in everyday living," before transitioning to the community on conditional release. The circuit court noted that Wyatt was remorseful for his actions and was making progress in treatment and commended him for his progress. However, it agreed with Louck Davis's recommendation that he should remain under institutional care until he finished all phases of the treatment program.

¶ 21　　　　Wyatt now appeals.

¶ 22　　　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 23　　　　　　　　　　　　　　A. Sexually Violent Person Finding

¶ 24　　　　Wyatt first argues that the State failed to prove beyond a reasonable doubt that he should be found an SVP. To designate someone an SVP under the Act, the State must prove three elements beyond a reasonable doubt: (1) the person has been convicted of a sexually violent offense, (2) the person has a mental disorder, and (3) the person's mental disorder must create a "substantial

probability" that he or she will engage in acts of sexual violence. 725 ILCS 207/15(b)(1)(A), (b)(4), (b)(5) (West 2022). When a respondent challenges the sufficiency of the evidence supporting an SVP finding, the reviewing court asks "only whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt." *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 598 (2007). We defer to the circuit court as the factfinder on determinations regarding expert credibility. *In re Commitment of Montanez*, 2020 IL App (1st) 182239, ¶ 70.

¶ 25    Wyatt does not challenge that he has committed a qualifying sexually violent offense, nor does he challenge any diagnosis of a mental disorder. Wyatt's sole challenge on appeal is the sufficiency of the State's evidence to prove that his mental disorder created a substantial probability that he would commit an act of sexual violence. See 725 ILCS 207/15(b)(5) (West 2022). Illinois courts have defined "substantially probable" to mean it is "much more likely than not" Wyatt will commit an act of sexual violence due to his mental disorders. *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1086 (2000); *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶ 37.

¶ 26    Wyatt largely argues that reasonable doubt arises from the mere fact that the two experts who testified had different opinions whether his mental disorders rendered him substantially probable to commit an act of sexual violence. However, the Fourth District, in *People v. Antoine*, rejected the argument that both psychiatrists must concur whether a respondent should be declared sexually dangerous in order to avoid reasonable doubt. 286 Ill. App. 3d 920, 925-26 (1997). In *Antoine* the appellate court explained:

    "Nothing in [the section requiring two qualified psychiatrists to evaluate respondent] indicates that the court-appointed psychiatrists must agree in their

8

court-ordered assessments that [respondent] is a sexually dangerous person. Furthermore, no language in any other section of the Act explicitly states or even implies that a [circuit] court must dismiss a petition if the psychiatrists do not so agree." *Id.* at 923.

Similarly, we find that the two psychiatrists did not need to agree that Wyatt should be designated an SVP for the court to make such a finding. The circuit court was free to accept the opinion of one expert over the other, assuming a sufficient basis for the finding existed. We must therefore review the State's evidence to determine whether a sufficient basis was established in this case.

¶ 27    The State alleged in its petition that Wyatt was convicted of and sentenced for a qualifying sexually violent offense, that he was diagnosed with several mental disorders, and that he is "dangerous to others because one or more of his mental disorders create a substantial probability that he will engage in acts of sexual violence." The petition included a certified copy of Wyatt's relevant conviction and an expert's evaluation of Wyatt that described his mental disorders.

¶ 28    The State presented Louck Davis's testimony to establish that Wyatt was substantially probable to commit acts of sexual violence. She reached her conclusion through a comprehensive evaluation of Wyatt using actuarial instruments Static-99R and Static-2002R, which are reasonably relied upon by other experts in the field. Independent of the instruments, she also considered factors relevant to Wyatt that were dynamic and subject to change over time. As previously noted, she utilized Wyatt's actual age of 59 even though he turned 60 three days after trial. She placed little weight on the concept that Wyatt should receive a lower risk assessment score merely because his birthday was a few days after trial. Louck Davis explained that a respondent's risk does not suddenly drop the moment he or she turns 60. Her ultimate opinion was that his mental disorders did render him substantially probable to reoffend.

9

¶ 29 Wyatt's expert, Arroyo, disagreed with Louck Davis. While he administered the two actuarial instruments Louck Davis performed, he used the age of 60 given that was the age he would be were he released. This resulted in a lower score than that registered by Louck Davis. He also used the VRS-SO instrument which he asserted considered both static and dynamic data. Wyatt argues the court could not find beyond a reasonable doubt that he was an SVP because the experts did not agree and essentially asks that we give more weight to Arroyo's testimony and opinion. It is not the function of this court to reweigh the evidence, make credibility determinations, or resolve conflicting evidence. *In re Detention of Erbe,* 344 Ill. App. 3d 350, 373 (2003). We must therefore defer to the circuit court's determination that Louck Davis's opinion was more credible. *Id.*

¶ 30 The court noted that Louck Davis used standard testing evaluations in the Static-99R and Static-2002R while Arroyo used the VRS-SO, which is not as commonly used. It found Louck Davis's assessment scores under the Static-99R and Static-2002R to be more credible given Arroyo's inability to clearly explain why the VRS-SO should be used or hold more weight than any other test. The court was further concerned that the VRS-SO instrument did not consider whether the subject's victims were minors, as were those of Wyatt in two instances.

¶ 31 The court expressed several reasonable bases why it gave greater weight to the testimony of Louck Davis. Again, we will not substitute our judgment for that of the factfinder in this instance. *Id*.

¶ 32 Turning to Louck Davis's opinion upon which the court's finding was based, Louck Davis testified that Wyatt had an above average risk of committing a sexual offense in the future and there were no protective factors present that lowered that risk. The fact that he turned 60 a few days after the trial did not significantly alter her analysis, he had no debilitating medical condition

10

and had not yet finished any sex offender treatment. These considerations led to her recommendation that Wyatt should be determined to be an SVP. Given the court's credibility determination and the reasoning to support Louck Davis's opinion, a rational finder of fact could have found beyond a reasonable doubt that Wyatt was substantially probable to commit future acts of sexual violence. We therefore hold that in the light most favorable to the State, it presented sufficient evidence proving the allegations of its petition beyond a reasonable doubt.

¶ 33                                    B. Wyatt's Commitment

¶ 34        Wyatt's last argument on appeal is that the circuit court abused its discretion when it committed him to institutional care in a secure facility rather than place him on conditional release. The State responds that the circuit court did not abuse its discretion and that the court's decision was supported by the evidence.

¶ 35        The Act provides that once a person is found to be an SVP an order shall be entered ordering the person to be committed in either institutional care in a secure facility or be placed on conditional release. 725 ILCS 207/40(b)(2) (West 2022). When making this determination, the circuit court must consider: (1) the nature and circumstances of the behavior that was the basis of the allegation in the State's petition, (2) the person's mental history and present mental conditions, (3) where the person will reside, (4) how the person will support himself, and (5) what arrangements are available to ensure that the person has access to and will participate in treatment opportunities. *Id.*; *In re Detention of Lenczycki*, 405 Ill. App. 3d 1041, 1050 (2010). The Act does not mandate that the court choose the "least restrictive" alternative. *Lenczycki*, 405 Ill. App. 3d at 1051. "Although commitment is potentially indefinite in nature, a committed individual may challenge his continued commitment under the Act through a petition for discharge or a petition for conditional release." *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 50. We review the circuit

court's decision to commit a person to a secure facility or to conditional release for an abuse of discretion. *Erbe*, 344 Ill. App. 3d at 374. This ruling will only be considered an abuse of discretion if it is unreasonable, arbitrary, or no reasonable person would take the same view as the circuit court. *Id.*

¶ 36    At the dispositional hearing, the State presented the detailed testimony of Louck Davis who informed the court that Wyatt was making progress in his treatment, had taken responsibility for his offenses, and expressed remorse. Louck Davis opined that Wyatt would be best suited to remain in the facility until after he progressed further in his treatment. No other witness testified, and no second opinion regarding Wyatt's conditional release was presented.

¶ 37    Although the court commended Wyatt for the progress he had made, it ultimately agreed with Louck Davis's recommendation, finding that Wyatt should remain detained until he reached the fifth phase of his treatment program. We cannot say the circuit court's decision to commit Wyatt was unreasonable or arbitrary because it was well reasoned and supported by the evidence. Again, it is not our function to reweigh the evidence or to make our own credibility determinations. *Id.* at 373. Accordingly, we hold that the court did not abuse its discretion when it committed Wyatt to a secure facility until he completed treatment as opposed to conditional release.

¶ 38                        III. CONCLUSION

¶ 39    The judgment of the circuit court of Kankakee County is affirmed.

¶ 40    Affirmed.

12