# Illinois Official Reports

## Appellate Court

---

**Clark v. Illinois State Board of Elections, 2014 IL App (1st) 141937**

---

| | |
|---|---|
| Appellate Court Caption | FRANK CLARK, President and Chairman of the Board of the Business Leadership Council; THE BUSINESS LEADERSHIP COUNCIL, KAREN RILEY, its Executive Director, and its Members, LEON FINNEY, ELZIE HIGGINBOTTOM, and JOHN HOOKER; THE CHINATOWN CHAMBER OF COMMERCE, and its President, RAYMOND CHIN; THE LITTLE VILLAGE CHAMBER OF COMMERCE, and its President, JULIO RODRIGUEZ, and its Executive Director, JAIME DI PAULO; FERNANDO GRILLO; IVAN SOLIS; CRAIG CHICO; DONALD R. JACKSON; ERNESTINE JACKSON; HELEN KING; JACKIE PETTY; and ANTHONY MARTINEZ, Plaintiffs-Appellees, v. ILLINOIS STATE BOARD OF ELECTIONS, JESSE R. SMART, Chairman, CHARLES W. SCHOLZ, Vice-Chairman, HAROLD BYERS, BETTY J. COFFRIN, ERNEST L. GOWEN, WILLIAM M. McGUFFAGE, BRYAN A. SCHNEIDER, and CASSANDER B. WATSON, Members in Their Official Capacity; JUDY BAAR TOPINKA, State Comptroller, in Her Official Capacity; DAN RUTHERFORD, State Treasurer, in His Official Capacity; BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO, LANGDON D. NEAL, Chairman, RICHARD A. COWEN and MARISOL HERNANDEZ, Commissioners, in Their Official Capacity, Defendants (The Committee for Legislative Reform and Term Limits, Intervenor-Appellant; Yes for Independent Maps, Intervenor). |
| District & No. | First District, First Division<br>Docket No. 1-14-1937 |
| Filed | August 20, 2014 |

| | |
|---|---|
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The "Term Limits Initiative" seeking to amend the Illinois Constitution by decreasing the number of legislative districts from 59 to 41, increasing the number of representative districts from 118 to 123, eliminating staggered terms for Senators and making all Senate terms four years, dividing each legislative district into three representative districts, instead of two, imposing an eight-year term limit on all members of the General Assembly and increasing the threshold needed to override the Governor's veto from three-fifths to two-thirds in each house was properly found invalid under article XIV, section 3, the provision of the Illinois Constitution requiring that amendments must be limited to structural and procedural subjects contained in the legislative article, and article III, section 3, of the constitution, known as the free and equal clause, which prohibits the combination of separate and unrelated questions in one referendum. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-7356; the Hon. Mary Mikva, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael W. McConnell, of Kirkland & Ellis LLP, of Washington, D.C., and Steven R. Merican, of Steven R. Merican PC, and J. Timothy Eaton and Jonathan Amarilio, both of Taft Stettinius & Hollister LLP, both of Chicago, for appellant.<br><br>Richard J. Prendergast, Michael T. Layden, and Lionel W. Weaver, all of Richard J. Prendergast, Ltd., and Michael J. Kasper, both of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Justices Hoffman and Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiffs, a group of not-for-profit organizations and citizen taxpayers of Illinois, brought an action to restrain the expenditure of public funds related to two petitions that proposed amendments to our state constitution. One petition, known as the Term Limits Initiative, sought to amend three sections of the legislative article (Ill. Const. 1970, art. IV), while the other petition sought to change the legislative redistricting process. Only the Term Limits Initiative is at issue in this appeal.

¶ 2        In the circuit court, the Committee for Legislative Reform and Term Limits (Committee) intervened to defend the Term Limits Initiative. Following cross-motions for judgment on the pleadings, the court found the Term Limits Initiative invalid under two constitutional provisions–article XIV, section 3, which governs ballot initiatives to amend the constitution, and article III, section 3, known as the free and equal clause (Ill. Const. 1970, art. XIV, § 3; art. III, § 3). On appeal, the Committee contends that the Term Limits Initiative satisfies the requirement of article XIV, section 3, that amendments must be limited to structural and procedural subjects contained in the legislative article. The Committee also asserts that the Term Limits Initiative satisfies the requirements of the free and equal clause. Because the proposed amendment violates both article XIV, section 3, and the free and equal clause, we affirm the circuit court's judgment.

¶ 3                                        BACKGROUND

¶ 4        Article XIV, section 3, of our constitution (Ill. Const. 1970, art. XIV, § 3) governs the process for proposing amendments by ballot initiative and states:

        "Amendments to Article IV of this Constitution may be proposed by a petition signed by a number of electors equal in number to at least eight percent of the total votes cast for candidates for Governor in the preceding gubernatorial election. Amendments shall be limited to structural and procedural subjects contained in Article IV. *** The procedure for determining the validity and sufficiency of a petition shall be provided by law. If the petition is valid and sufficient, the proposed amendment shall be submitted to the electors at that general election and shall become effective if approved by either three-fifths of those voting on the amendment or a majority of those voting in the election."

¶ 5        Pursuant to article XIV, section 3, the Term Limits Initiative would amend three sections of the legislative article of the constitution (Ill. Const. 1970, art. IV). In section 1 of the legislative article, titled "Legislature–Power and Structure," the amendment would decrease the number of legislative districts[1] from 59 to 41 and increase the number of representative districts from 118 to 123. The proposed amendment would also make changes to three parts of section 2 of the legislative article, titled "Legislative Composition." In section 2(a), the amendment would eliminate staggered terms for Senators and make all Senate terms four years. In section 2(b), each legislative district would be divided into three representative districts, instead of two. Additionally, the amendment would create section 2(f), which would impose an eight-year term limit on all members of the General Assembly. Lastly, in section 9

_____
[1]Legislative districts are Senate districts.

of the legislative article, titled "Veto Procedure," the amendment would increase the threshold needed to override the Governor's veto from three-fifths to two-thirds in each house.

¶ 6     In their complaint, plaintiffs sought a declaratory judgment that the Term Limits Initiative is invalid and to enjoin various entities from disbursing public funds to put the proposed amendment on the November 4, 2014, general election ballot. Plaintiffs and the Committee filed cross-motions for judgment on the pleadings pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2012)).

¶ 7     In their motion and subsequent responses, plaintiffs contended that the proposed amendment failed to comply with article XIV, section 3. Plaintiffs asserted that, based on *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502 (1994) (*CBA II*), term limits are neither a structural nor procedural subject. Plaintiffs stated that because term limits are included in the Committee's proposed amendment, the amendment violated the article XIV, section 3, requirement that amendments "shall be limited to structural and procedural subjects contained in Article IV." Ill. Const. 1970, art. XIV, § 3. Plaintiffs additionally maintained that the proposed amendment's increase in the threshold for overriding a Governor's veto was also neither structural nor procedural, and instead was a substantive change that would transfer power from the legislature to the executive branch.

¶ 8     Plaintiffs also contended that the proposed amendment violated the free and equal clause because it combined separate and unrelated questions in one referendum. Plaintiffs further contended that the components of the proposed amendment were not reasonably related to a common objective in a workable manner, as required by *Coalition for Political Honesty v. State Board of Elections*, 83 Ill. 2d 236 (1980) (*Coalition II*). Plaintiffs asserted that the Committee's stated common objective–increasing the responsiveness of the General Assembly and reducing the influence of partisan or special interests–was too vague and subjective.

¶ 9     In its motion for judgment on the pleadings and subsequent responses, the Committee contended that its proposed amendment met the requirements for a ballot initiative under article XIV, section 3. The Committee asserted that its proposed amendment's changes to legislative districts, legislative terms, and veto procedures were the sort of changes specifically contemplated by the drafters of article XIV, section 3. Additionally, the Committee maintained that term limits could be included in ballot initiatives and urged the court to consider the text of the proposed amendment as a whole to assess its constitutionality, rather than focus on the term limits provision in isolation. The Committee also stated that the proposed amendment was drafted to conform to *CBA II*, which had held invalid a previous amendment that sought to impose term limits. The Committee alternatively argued that if the court found the proposed amendment invalid because of *CBA II*, then *CBA II* should be overruled.

¶ 10     As to the challenge under the free and equal clause, the Committee asserted that increasing the number of representatives in each district, limiting legislative terms, and increasing the threshold needed to override a Governor's veto would serve the common objective of increasing legislative responsiveness and reducing the influence of narrow, partisan, or special interests. The Committee stated that, "[b]ecause the office of the Governor is the one office that represents all of the citizens of Illinois, the proposed amendment here would reduce the threat that partisan or special interests will succeed in enacting self-interested legislation."

¶ 11     Following a hearing, the court issued an order and opinion on June 27, 2014, that found the proposed amendment invalid. The court found that the term limit provision at the heart of the

proposed amendment "runs headlong into *CBA II*." According to the court, adding other components, such as changing the number of legislative and representative districts and the number of votes needed to override a Governor's veto, could not save the initiative because, as a result of the term limits provision, the proposed amendment was not limited to structural and procedural subjects contained in the legislative article. The court also found that the proposed amendment violated the free and equal clause. The court stated that the Committee's stated common objectives were "so broad that they cannot be viewed as bases to bring these component parts into a consistent, workable whole."

¶ 12    In addition to appealing to this court, the Committee moved for direct supreme court review pursuant to Illinois Supreme Court Rule 302(b) (eff. Oct. 4, 2011). The supreme court denied the Committee's motion on July 17, 2014.

¶ 13                                              ANALYSIS

¶ 14    On appeal, the Committee first contends that the proposed amendment satisfies the requirement under article XIV, section 3, that ballot initiatives must be limited to structural and procedural subjects in the legislative article. The Committee argues that the proposed amendment changes the basic qualities of the legislative branch by resizing the houses and restructuring legislative terms. Moreover, according to the Committee, term limits are an integrated element of a larger structural change to the General Assembly as an institution. Additionally, the Committee contends that the proposed amendment changes the process for holding senatorial elections and, by amending the procedure for overriding a Governor's veto, changes the process by which the General Assembly adopts a law. The Committee also asserts that the drafting history of article XIV, section 3, confirms that the proposed amendment is precisely the sort of initiative that the framers of the constitutional provision contemplated would be the subject of a direct vote by citizens.

¶ 15    Because constitutionality is a pure question of law, our review is *de novo*. *Smith-Silk v. Prenzler*, 2013 IL App (5th) 120456, ¶ 12. Further, we review the grant of judgment on the pleadings *de novo*. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010).

¶ 16    A provision to amend the legislative article of our constitution by direct initiative (Ill. Const. 1970, art. XIV, § 3) was added to our constitution in 1970. *Chicago Bar Ass'n v. State Board of Elections*, 137 Ill. 2d 394, 398 (1990) (*CBA I*). Four cases have interpreted the requirement in article XIV, section 3, that such amendments must be limited to structural and procedural subjects contained in the legislative article (Ill. Const. 1970, art. XIV, § 3). Each will be briefly discussed as background.

¶ 17    In *Coalition for Political Honesty v. State Board of Elections*, 65 Ill. 2d 453 (1976) (*Coalition I*), the court found that the word "and" in "structural and procedural" subjects meant that proposed amendments must be both structural and procedural, such as a proposal to convert from a bicameral to a unicameral legislature or to convert from multiple- to single-member legislative districts. *Coalition I*, 65 Ill. 2d at 466. The court rejected an interpretation that amendments could contain structural *or* procedural subjects. *Id*. Additionally, the court referred to proceedings from the 1970 Constitutional Convention where a delegate explained that the provision "has been structured to apply only to the legislative article and to be limited to the area of government which it is most likely will not be changed in the constitution by amendment." (Internal quotation marks omitted.) *Coalition I*, 65 Ill. 2d at 470 (quoting 4 Record of Proceedings, Sixth Illinois Constitutional Convention

2911). The delegate further stated that "[t]he legislature, being composed of human beings, will be reluctant to change the provisions of the constitution that govern its structure and makeup, the number of its members, and those sort[s] of provisions." (Internal quotation marks omitted.) *Id.* We also note that during the convention, it was stated that "power, structure, composition, and apportionment" were "critical areas" that would be subject to a ballot initiative. 4 Record of Proceedings, Sixth Illinois Constitutional Convention 2712.

¶ 18    The court in *CBA I* considered the difference between structural and procedural subjects and substantive issues. Before the court was a proposed amendment that would have created a special process for bills that sought to increase revenue (*CBA I*, 137 Ill. 2d at 397-98). The court noted that based on the debates of the 1970 Constitutional Convention, "only a very limited form of constitutional initiative was acceptable." *Id.* at 401. Further, the proposal and debates reflected that article XIV, section 3, was not intended to make substantive changes to the constitution, and that proposals should only pertain to the basic qualities of the legislative branch, such as "structure, size, organizations, procedures, etc." *Id.* at 403 (citing 6 Record of Proceedings, Sixth Illinois Constitutional Convention 1400-01). The delegates to the constitutional convention sought to avoid article XIV, section 3, as a way to incorporate into the constitution "what in effect was legislation." *CBA I*, 137 Ill. 2d at 404. Ultimately, the court held the proposed amendment invalid because it ran afoul of the language in article XIV, section 3, that " '[a]mendments *shall be limited* to structural and procedural *subjects contained in Article IV*.' " (Emphases in original.) *Id.* at 403 (quoting Ill. Const. 1970, art. XIV, § 3). The proposed amendment at issue was not limited to structural and procedural subjects in article IV because "[w]rapped up in this structural and procedural package" was a substantive issue not found in article IV–increasing state revenue or taxes. *CBA I*, 137 Ill. 2d at 404.

¶ 19    Addressing a similar issue, in *Lousin v. State Board of Elections*, 108 Ill. App. 3d 496 (1982), the court held invalid a proposed amendment that would have allowed bills to be initiated by voters and created a process for such measures to become law. The court found that the proposed amendment would have vested power in the electors, which was not permitted by article XIV, section 3. *Lousin*, 108 Ill. App. 3d at 503-04.

¶ 20    Finally, *CBA II* held invalid a proposed amendment that would have imposed an eight-year term limit on members of the General Assembly. The proposed amendment's term limits provision was located in section 2(c) of the legislative article and stated:

> "No person shall be eligible to serve as a member of the General Assembly for more than eight years. No person who has served six years in the General Assembly shall be eligible to be elected to a four-year term as a Senator. The tenure limitation is not retroactive ***." (Internal quotation marks omitted.) *CBA II*, 161 Ill. 2d at 505.

The proposed amendment also included additions to sections 2(a) and 2(b) of the legislative article so that service could be calculated under the new "tenure limitation." *Id.*

¶ 21    The court found that this proposed amendment was neither structural nor procedural. *Id.* at 510. The court characterized term limits as a matter of eligibility or qualifications of an individual legislator, which "do not involve the structure of the legislature as an institution" (emphasis omitted) because the General Assembly would remain a bicameral legislature with the same number of members and the same organization. *Id.* at 509. As to procedure, the court stated that "the eligibility or qualifications of an individual legislator do not involve any of the General Assembly's procedures" because the process by which the General Assembly adopted a law would remain unchanged. *Id.*

- 6 -

¶ 22 Based on the cases discussed above, some components of the Committee's proposed amendment may very well comply with article XIV, section 3. However, the proposed amendment is ultimately invalid because of its term limits provision. *CBA II* viewed term limits as a matter of the "eligibility or qualifications of an individual legislator," and in turn, neither structural nor procedural. *Id.* The Committee contends that *CBA II* is limited to its facts and that we should examine the proposed amendment as a whole. The Committee urges this court to view its proposed amendment as a package that "changes the entire structure of legislative terms," with term limits "as an integrated element of this larger structural change." According to the Committee, the proposed amendment will "affect the composition of the legislature" and "[change] the power structure of the General Assembly overall." Attempting to distinguish *CBA II*, the Committee states that its proposed amendment does not enact legislative term limits in isolation but, rather, "completely restructures legislative terms," in that it abolishes staggered terms and two-year senate terms and limits remaining terms to eight years. At oral argument, the Committee stated that term limits were directly tied to proposed changes in the Senate's composition by affecting the seniority system and the procedure for electing Senators. Plaintiffs, meanwhile, interpret *CBA II* to mean that term limits cannot be included as part of any ballot initiative. As a result, according to plaintiffs, the proposed amendment is invalid because it is not limited to structural and procedural subjects.

¶ 23 Although the Committee urges this court to view its proposed amendment as a whole, we note that in support of this proposition the Committee cites cases that interpret statutes or supreme court rules, not ballot initiatives. See *People v. Tousignant*, 2014 IL 115329, ¶¶ 7-8 (construing a supreme court rule and noting the same principles that apply to the interpretation of statutes govern the interpretation of supreme court rules); *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 266 (2003) (interpreting the Nursing and Advanced Practice Nursing Act); *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503 (2000) (interpreting the Local Governmental and Governmental Employees Tort Immunity Act); *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388 (1996) (interpreting the Local Governmental and Governmental Employees Tort Immunity Act).

¶ 24 Further, we are not persuaded by the Committee's attempt to connect the term limits provision with other parts of the amendment. We are bound by our supreme court's holding–sparse as its reasoning was–that term limits involve "the eligibility or qualifications of an individual legislator," and so are neither structural nor procedural (*CBA II*, 161 Ill. 2d at 509-10), unlike other parts of the Committee's proposed amendment that affect the General Assembly as a whole. The Committee seems to assert that term limits are intertwined with the proposal to make all Senate terms four years. Yet, while four-year Senate terms would facilitate the eight-year term limits, they do not change term limits' fundamental quality–as stated by our supreme court–of only relating to the eligibility or qualifications of an individual legislator. In spite of the Committee's attempt to make term limits part of structural and procedural changes, we find that the Committee has failed to adequately distinguish its proposed amendment from the amendment at issue in *CBA II* or provide a sufficient reason to depart from *CBA II*'s holding. See *People v. Colon*, 225 Ill. 2d 125, 146 (2007) (any departure from *stare decisis* must be "specially justified" (internal quotation marks omitted)).

¶ 25 Because the proposed amendment contains a provision that is neither structural nor procedural, it violates article XIV, section 3's requirement that amendments "shall be limited

to structural and procedural subjects contained in Article IV." Ill. Const. 1970, art. XIV, § 3. See also *CBA I*, 137 Ill. 2d at 403. As a result, the proposed amendment is invalid.

¶ 26 We next turn to the question of whether the proposed amendment also violates the free and equal clause. The Committee contends that its proposed amendment complies with the requirements of the free and equal clause because the components share a common objective of increasing the responsiveness of the General Assembly and reducing the influence of partisan and special interests. The Committee further contends that the requirements of the free and equal clause are not particularly demanding in the constitutional context, and notes that in *Coalition II*, a similar objective of achieving structural and procedural change in the House of Representatives was found sufficient.

¶ 27 Our constitution requires that "[a]ll elections shall be free and equal." Ill. Const. 1970, art. III, § 3. The free and equal clause guarantees the right to vote in Illinois and reflects a broad public policy to expand the opportunity to vote. *Orr v. Edgar*, 283 Ill. App. 3d 1088, 1101 (1996). Under the clause, every qualified voter has a right to vote and all votes must have equal influence. *Chicago Bar Ass'n v. White*, 386 Ill. App. 3d 955, 959 (2008). Further, the free and equal clause gives constitutional priority to the state's public policy of encouraging the full and effective participation of the entire electorate. *Orr*, 283 Ill. App. 3d at 1102.

¶ 28 The free and equal clause is violated when separate and unrelated questions are combined in a single proposition on a ballot. *Coalition II*, 83 Ill. 2d at 254. It has been said that such combining of separate and unrelated questions prevents a voter from giving a free and equal expression of preference as to each proposition. See *Routt v. Barrett*, 396 Ill. 322, 332 (1947); *People ex rel. Hall v. Bopp*, 396 Ill. 80, 83 (1947). *Cf. Village of Deerfield v. Rapka*, 54 Ill. 2d 217, 223-24 (1973) (referendum that combined in a single proposition whether a property should be acquired and whether bonds should be issued to meet the cost of that acquisition did not consist of separate and unrelated questions). In the context of a ballot initiative, our supreme court has stated that separate questions may be combined in a single proposition as long as they are reasonably related to a common objective in a workable manner. *Coalition II*, 83 Ill. 2d at 256. An additional consideration is whether the questions are compatibly interrelated to provide a consistent and workable whole in the sense that reasonable voters can support the entire proposition. *Id.* at 260.

¶ 29 Here, according to the Committee's "Explanation of Amendment," the proposed amendment has six components: (1) establish term limits for members of the General Assembly; (2) require a two-thirds vote in each house to override a Governor's veto; (3) abolish two-year senatorial terms; (4) increase the size of the House of Representatives to 123 representatives; (5) decrease the size of the Senate to 41 Senators; and (6) divide senatorial districts into three representative districts instead of two. We find that these components are separate and unrelated. We are not convinced by the Committee's attempt to unify these various components under the common objective of increasing the responsiveness of the General Assembly and reducing the influence of partisan and special interests. This objective is extremely broad. At oral argument, the Committee even suggested that an objective of

amending article IV could be sufficient, which would seem to eliminate the need for any limits whatsoever. We do not believe that *Coalition II* intended this result.[2]

¶ 30    Moreover, we do not see the proposed amendment's disparate components as compatibly interrelated. The Committee has failed to persuasively articulate how increasing the threshold needed to override a Governor's veto is at all related to increasing the responsiveness of the General Assembly. Even if imposing term limits could be related to increasing the size of each house and changing the structure of senatorial terms, the veto provision seems to be an entirely separate and distinct change, unrelated to other parts of the proposed amendment. The Committee asserts that a higher threshold for overriding a veto would compensate for the decrease in the absolute number of Senators. This argument seems to overlook the purpose of proportions. Overall, the proposed amendment is very different from the proposed amendment in *Coalition II*, where three propositions needed to be presented together to avoid potentially incongruous results and "at least four years of uncertainty and confusion caused by a legislature in an intermediate stage of development." *Id*. at 255. Both the term limits and veto provisions could easily stand as independent propositions without affecting the rest of the proposed changes. For these reasons, the proposed amendment is invalid under the free and equal clause.

¶ 31    Finally, the Committee contends that if we affirm the circuit court and its reading of *CBA II*, we should issue a certificate of importance under Illinois Supreme Court Rule 316 (eff. Dec. 6, 2006). The Committee argues that affirming the circuit court would create an internal inconsistency between an interpretation of *CBA II* that categorically prohibits any proposed amendment that includes term limits and prior precedents holding that nonsubstantive amendments, such as the one here, can be pursued through ballot initiatives.

¶ 32    By the plain language of Rule 316, the Committee's request is premature. Rule 316 states that an application for a certificate of importance may be included in a petition for rehearing or may be made by filing a petition within 35 days after the entry of the judgment appealed from. Ill. S. Ct. R. 316 (eff. Dec. 6, 2006). As such, Rule 316 provides that a party should seek certification after this court renders an opinion on the merits adverse to that party, and certification should be requested either in a petition for rehearing or in a separate petition, but not in the initial appellate brief, as occurred here. *People v. Turner*, 74 Ill. App. 3d 840, 844 (1979). Accordingly, we deny the Committee's request for certification pursuant to Rule 316 at this time.

¶ 33                                                    CONCLUSION
¶ 34    For the foregoing reasons, the Committee's proposed amendment is invalid under article XIV, section 3, and the free and equal clause.

¶ 35    Affirmed.

---

[2]Although we follow *Coalition II*, we note that *Coalition II* was subsequently criticized by the Arizona Supreme Court in *Slayton v. Shumway*, 800 P.2d 590, 593-94 (Ariz. 1990), for misinterpreting an Arizona case that underlies the standards announced in *Coalition II*.